1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BLADY WORKFORCE LAW GROUP LLP**
I. BENJAMIN BLADY — Cal. Bar No. 162470
5757 Wilshire Boulevard, Suite 535
Los Angeles, CA 90036
Phone: (323) 933-1352
Email: bblady@bwlawgroup.com

**LESCHES LAW**
LEVI LESCHES — Cal. Bar No. 305173
5757 Wilshire Boulevard, Suite 535
Los Angeles, CA 90036
Phone: (323) 900-0580
Email: levi@lescheslaw.com

ATTORNEYS FOR
Plaintiff Richard MARTIN

# UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MARTIN, an individual, as Private Attorney General, and on behalf of all others similarly situated; | Case No: 2:21-cv-01049-MCE-DB |
| Plaintiff, | **FIRST AMENDED CLASS COMPLAINT FOR DAMAGES** |
| v. | |
| BALL CORPORATION, an Indiana Corporation; BALL METAL BEVERAGE CONTAINER CORP., a Colorado Corporation FRANK BRAGER, an Individual; DOES 1 through 20, inclusive. | |
| Defendant. | |

**(1)  DISABILITY DISCRIMINATION (FEHA)**
**(2)  DISABILITY RETALIATION (FEHA)**
**(3)  FAILURE TO ENGAGE IN A TIMELY GOOD–FAITH INTERACTIVE PROCESS (FEHA)**
**(4)  CFRA RETALIATION**
**(5)  FMLA RETALIATION**
**(6)  SICK-LEAVE RETALIATION/UNLAWFUL POLICY (*LAB. CODE* § 246 *ET SEQ.*)**
**(7)  [PAGA] SICK-LEAVE RETALIATION/UNLAWFUL POLICY (*LAB. CODE* § 246 *ET SEQ.*)**
**(8)  *TAMENY***
**(9)  FRAUD**

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

(10) **NEGLIGENT MISREPRESENTATION**
(11) **FAILURE TO PAY OVERTIME (LAB. CODE § 510) (CLASS)**
(12) **[PAGA] FAILURE TO PAY OVERTIME (LAB. CODE § 510)**
(13) **FAILURE TO PAY WAGES DUE (*LAB CODE* §§ 201, 221)**
(14) **[PAGA] FAILURE TO PAY WAGES DUE (*LAB CODE* §§ 201, 221)**
(15) **WAITING TIME PENALTIES (*LAB CODE* §§ 201 *ET SEQ.*)**
(16) **INACCURATE WAGE STATEMENT (*LAB CODE* § 226)**
(17) **[PAGA] LABOR CODE §§ 6300 *ET SEQ.***
(18) **UCL — § 17200 (CLASS)**

**JURY TRIAL DEMANDED ON ALL COUNTS**

Plaintiff Richard Martin, on behalf of himself and all others similarly situated, (collectively "Plaintiffs"), demanding a jury trial on all counts, allege:

<u>**JURISDICTION & VENUE**</u>

1.    **Plaintiff Richard Martin**, at all times relevant herein, was a resident, domiciliary, and citizen of California, with his primary place of residence in Solano County.

2.    **Defendant BALL Corporation** is a corporation organized under the laws of the State of Indiana, with its principal place of business identified in state filings as 9200 W. 108th Circle Westminster, Colorado 80021.

3.    **Defendant BALL Metal Beverage Container Corporation** is a corporation organized under the laws of the State of Colorado, with its principal place of business identified in state filings as 9200 W. 108th Circle Westminster, Colorado 80021.

4.    **Defendant BALL Corporation & Defendant BALL Metal Beverage Container Corporation** are referred to collectively as "**Defendants BALL**."

5.    **Defendant Frank Brager**, on information and belief is a resident, domiciliary, and citizen of California, with his primary place of residence in Solano County.

6.    The BALL Defendants operate an industrial plant in Solano County, at 2400 Huntington Dr, Fairfield, CA 94533.

7.    Plaintiff has, within the time prescribed by law, obtained a "right-to-sue" letter from the California Department of Fair Employment and Housing; a copy of which letter is attached hereto as Exhibit "A".

8.    Plaintiff does not know the true names of Defendants Does 1 through 20, inclusive, and therefore sues them by those fictitious names.  Plaintiff is informed and believes, and on the basis of that information and belief, herein alleges, that each of those Defendants was in some manner legally responsible for the events and happenings alleged in this Complaint and for Plaintiff's damages.  The names, capacities, and relationships of Does 1 through 20, will be alleged by amendment to this Complaint when they are known.

9.    Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, Defendant Does 1 through 20, inclusive, and each of them, were the agents and/or employees of each of the remaining Defendants, and each of them, in doing the acts alleged in this Complaint, were acting within the purpose and scope of said agency and employment.

10.    Each Defendant is sued individually and as an agent, conspirator, aider and abettor, investor, manager, unit-holder, employee and/or control-person for each of the other Defendants, and the liability of each Defendant arises from the fact that each has engaged in all or part of the unlawful acts, plans, schemes, or wrongs complained of herein and was acting within the course and scope of said agency, partnership, conspiracy, and employment.

11.    Plaintiff does not know the entity that employed him, and sued the Ball Defendants under subdivision (c) of section 379 of the *Code of Civil Procedure*, which provides that "[w]here the plaintiff is in doubt as to the person from whom he or she is entitled to redress, he or she may join two or more defendants, with the intent that the question as to which, if any, of the defendants is liable, and to what extent, may be determined between the parties."

# **GENERAL ALLEGATIONS**

12.     Plaintiff MARTIN was employed by Defendants BALL as a machinist in BALL's Fairfield Plant, which manufactures cans of the type used to package canned soup, vegetables, and similar products.

13.     On November 6, 2018, MARTIN was injured at work while lowering a hopper of manufactured cans.

14.     MARTIN reported that he was injured to a supervisor; the supervisor gave MARTIN ibuprofen and sent him back to work.

15.     Every day for the following four days, MARTIN reported to his supervisors that he was injured; yet, each day, MARTIN was sent back to work.

16.     Finally, MARTIN advised Defendants BALL that unless he was provided medical assistance he would leave work and work it out himself.

17.     Only AFTER MARTIN made this ultimatum, MARTIN'S supervisors sent him to meet with a Human Resources representative who took MARTIN to a hospital where he was diagnosed with a pulled muscle behind his rotator cuff.

18.     The hospital gave MARTIN a shot, muscle relaxants, and pain medications, and set him up with an appointment with a Workers Compensation doctor.

19.     The doctor told MARTIN he could return to work on light duty.    His work restrictions included no heavy lifting or pulling.

20.     Defendants BALL switched MARTIN to a light-duty position, but in this position, he was not given any overtime work.

21.     MARTIN had accumulated over 400 hours of overtime in the preceding months, and MARTIN was retaliated against by being denied overtime.

22.     MARTIN was also required to change from his previous night shift to a day shift, without being provided any reasonable accommodation in the form of being provided time to seek and obtain childcare during those different work hours; in violation of Labor Code section 230.8.

**FIRST AMENDED CLASS COMPLAINT FOR DAMAGES**
**JURY TRIAL DEMANDED**

23.    On November 20, 2018, MARTIN went, to a scheduled doctor's appointment with his Worker's Compensation doctor.

24.    MARTIN returned from the doctor's appointment at 11:00 a.m. and advised his supervisor that he was ready to work his regular 6 p.m. to 6 a.m. shift.  The supervisor advised Martin that he would not be allowed to work at 6:00 p.m., because the company required at least 8 hours between shifts.

25.    On information and belief, this representation was fraudulent and intended to set MARTIN up for termination.

26.    The supervisor advised MARTIN that, due to the fact that he had gone to a Worker's Compensation on company time, he would not be allowed to begin his shift until 8 p.m., and he would be docked one "point", pursuant to the company's policy of: Docking one point for missing the first hour in a shift; and docking two points for time missed in excess of 1.1 hours.

27.    MARTIN had offered to come at 8 p.m. until 8 a.m. to avoid being docked any points.  That offer was refused.  MARTIN was advised that, no matter what, he would be docked one point because his Worker's Compensation doctor's visit would delay his next shift.

28.    MARTIN had been advised that EXCEEDING 10 points was grounds for termination. At the time, Martin had eight points.

29.    Because November 28, 2018 was MARTIN'S work anniversary, and would reset the "points" to zero, MARTIN asked whether taking off the entire shift---which would result in two points---would be grounds for termination.

30.    MARTIN'S supervisor consulted with the workplace policy manual, in front of Martin, and then assured Martin that only EXCEEDING 10 points---i.e. accruing eleven points---was grounds for termination. Relying on this assurance, MARTIN took the remainder of his shift off.

31.    On information and belief, this representation was fraudulent and intended to set MARTIN up for termination.

32.    MARTIN returned to work the next shift, and worked the remainder of the work

1    week, November 21 through November 23, without incident.

2         33.    On November 27, 2018, MARTIN returned to work, and he was called into the office

3    by his production manager, Defendant Bragger, and a Human Resources Representative.

4         34.    Defendant Bragger and the Human Resources Representative informed Martin that

5    he was being suspended without pay, pending an investigation.

6         35.    MARTIN was not informed what matter was being investigated. Since Mr.

7    MARTIN had been working for Defendants BALL for exactly one year at this point, he was due

8    for a $1.00 per hour pay raise.

9         36.    Additionally, MARTIN had accumulated over 400 hours of overtime, which entitled

10   Martin to a significant bonus, in the thousands of dollars, which should have been paid to MARTIN

11   in the following February.

12        37.    Defendants BALL suspended and terminated MARTIN to avoid giving him his pay

13   raise and to avoid paying his bonus.  Defendants BALL took retaliatory action against MARTIN

14   due to his engaging in protected activity by seeking disability accommodations.

15        38.    Alternatively, Defendants BALL suspended and terminated MARTIN because,

16   knowing that he had been injured, and that, on his work anniversary, his FMLA/CFRA rights would

17   accrue, Defendants BALL suspended and terminated MARTIN so as to avoid FMLA/CFRA

18   obligations.

19        39.    On December 8, 2018, Defendant Bragger called MARTIN and informed him that

20   he was being terminated because of his attendance points. Clearly, MARTIN was terminated in

21   retaliation for having sought an accommodation for a temporary disability.

22        40.    As a result, Martin's termination was wrongful in violation of California's Public

23   Policy.

24

25                              **FIRST CAUSE OF ACTION**

26                          **Disability Discrimination (FEHA)**

27                    **By Plaintiff MARTIN against Defendants BALL**

28

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

**and Does 1 through 20, Inclusive**

41.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

42.    Defendants BALL, and Does 1 through 20, inclusive, employed more than 5 employees within California.

43.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20, inclusive.

44.    Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN had a torn rotator cuff,  constituting a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

45.    Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN as having a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

46.    Plaintiff MARTIN was able to perform all essential job duties, either with reasonable accommodations, such as "job restructuring," "modified work schedule," "unpaid leave," and/or other reasonable accommodations, 2 C.C.R. § 11065(p); *id*.. § 11068(c); and/or Plaintiff MARTIN was able to perform all essential job duties without reasonable accommodation.

47.    Defendants BALL, and Does 1 through 20, inclusive, discharged Plaintiff and/or subjected Plaintiff to adverse employment action and/or refused to provide Plaintiff with reasonable accommodations, including, without limitation, refused to provide Plaintiff with the reasonable accommodations of being able to visit a doctor and obtain medical care.

48.    Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1 through 20, inclusive.

49.    The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1  substantial factor in causing MARTIN's harm.

2      50.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount

3  no less than $250,000.

4      51.    Said conduct by Defendants, and Does 1 through 20, and each of them, was

5  intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's

6  rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that

7  renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such

8  sum that shall be determined at the time of trial.

9                        **SECOND CAUSE OF ACTION**

10                       **Disability Retaliation (FEHA)**

11                **By Plaintiff MARTIN against Defendants BALL**

12                    **and Does 1 through 20, Inclusive**

13      52.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph

14      53.    Defendants BALL, and Does 1 through 20, inclusive, employed more than 5

15  employees within California.

16      54.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

17  inclusive.

18      55.    Plaintiff MARTIN engaged in the protected activity of requesting disability

19  accommodations, including, without limitation, requesting the disability accommodation of leave

20  from work to obtain medical treatment necessary for treating MARTIN's disability.

21      56.    Plaintiff MARTIN was discharged and/or subjected to an adverse employment

22  action.

23      57.    Plaintiff MARTIN's protected activity in requesting disability accommodations,

24  including, without limitation, requesting the disability accommodation of leave from work to obtain

25  medical treatment necessary for treating MARTIN's disability, were a substantial motivating reason

26  for the decision by Defendants BALL, and Does 1 through 20, inclusive, to discharge Plaintiff

27  MARTIN.

28

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1    58.    Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN

2    had a torn rotator cuff,  constituting a musculoskeletal physical disability and/or other disability

3    under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities

4    of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . .

5    musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

6    59.    Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN

7    as having a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d),

8    and which limited, amongst other limitations, the major life activities of "performing manual tasks,"

9    "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R.

10    § 11065(l).

11    60.    Plaintiff MARTIN was discharged and/or subjected to an adverse employment

12    action because he was disabled and/or because Defendants BALL, and Does 1 through 20,

13    inclusive, perceived Plaintiff MARTIN as being disabled.

14    61.    Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1

15    through 20, inclusive.

16    62.    The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a

17    substantial factor in causing MARTIN's harm.

18    63.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount

19    no less than $250,000.

20    64.    Said conduct by Defendants, and Does 1 through 20, and each of them, was

21    intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's

22    rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that

23    renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such

24    sum that shall be determined at the time of trial.

25    ///

26    ///

27    ///

28

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

**THIRD CAUSE OF ACTION**

**Failure to Engage in Timely Good-Faith Interactive Process (FEHA)**

**By Plaintiff MARTIN against Defendants BALL**

**and Does 1 through 20, Inclusive**

65.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

66.    Defendants BALL, and Does 1 through 20, inclusive, employed more than 5 employees within California.

67.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20, inclusive.

68.    Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN had a torn rotator cuff,  constituting a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions."  2 C.C.R. § 11065(l).

69.    Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN as having a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions."  2 C.C.R. § 11065(l).

70.    Plaintiff MARTIN was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that he would be able to perform the essential job requirements.

71.    Defendants BALL, and Does 1 through 20, inclusive, failed to participate in a timely good-faith interactive process with Plaintiff MARTIN to determine whether reasonable accommodation could be made.

72.    Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1 through 20, inclusive.

73.     The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a substantial factor in causing MARTIN's harm.

74.     Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount no less than $250,000.

75.     Said conduct by Defendants, and Does 1 through 20, and each of them, was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such sum that shall be determined at the time of trial.

**FOURTH & FIFTH CAUSE OF ACTION**

**CFRA/FMLA Retaliation**

**By Plaintiff MARTIN against Defendants BALL**

**and Does 1 through 20, Inclusive**

76.     Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

77.     Defendants BALL, and Does 1 through 20, inclusive, employed more than 50 employees within California.

78.     Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20, inclusive.

79.     On no later than November 28, 2018, Plaintiff MARTIN became eligible to no less than 12 weeks job-protected leave.

80.     Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN had a torn rotator cuff,  constituting a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

81.     Defendants BALL, and Does 1 through 20, believed that Plaintiff MARTIN, being injured, would potentially seek to take CFRA leave, and, for such reason, Defendants BALL, and

Does 1 through 20, terminated Plaintiff MARTIN without providing him reasonable accommodations and/or without providing him a reasonable opportunity to challenge his termination and/or through misrepresenting its point policy, so as to preclude MARTIN's ability to take protected leave.

82.    The belief by Defendants BALL, and Does 1 through 20, that Plaintiff MARTIN was likely to seek CFRA leave was a substantial motivating reason for Plaintiff MARTIN being discharged and/or subjected to an adverse employment action.

83.    Plaintiff MARTIN, in fact, made a request for FMLA leave, only to be told he was not eligible; and, thereafter, Plaintiff MARTIN was fired before he could claim eligibility.

84.    Additionally, Plaintiff MARTIN is aware of another employee that was fired on her one-year work anniversary.  Plaintiff MARTIN is informed and believed, and thereon alleges, that Defendants BALL, and Does 1 through 20, inclusive, perceived that other employee as likely to seek CFRA/FMLA rights.

85.    Plaintiff MARTIN was discharged and/or subjected to an adverse employment action because he was disabled and/or because Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN as being disabled.

86.    Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1 through 20, inclusive.

87.    The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a substantial factor in causing MARTIN's harm.

88.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount no less than $250,000.

89.    Said conduct by Defendants, and Does 1 through 20, and each of them, was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such sum that shall be determined at the time of trial.

**SIXTH CAUSE OF ACTION**

**Violation of Healthy Workplaces, Healthy Families Act of 2014 (HWHFA)**

**By Plaintiff MARTIN against Defendants BALL**

**and Does 1 through 20, Inclusive**

90.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

91.    Defendants BALL, and Does 1 through 20, inclusive, employed Plaintiff MARTIN within California.

92.    Defendants BALL, and Does 1 through 20, inclusive, employed MARTIN without any applicable Collective Bargaining Agreement as a machinist in Defendants BALL's Fairfield food-can manufacturing facility, and, accordingly, Defendants BALL, and Does 1 through 20, inclusive, were not exempt under section 245.5 of the *Labor Code*.

93.    Defendants BALL implemented an unlawful Sick Leave policy that failed to satisfy the minimum requirements of California's HWHFA.  (*Lab. Code*, § 246(e).)

94.    Defendants BALL, and Does 1 through 20, inclusive, employed MARTIN, and similarly-situated employees, in 12-hour shifts.

95.    Under the sick-leave policy ("The Unlawful Absence Policy") of Defendants BALL, and Does 1 through 20, inclusive, employees were not allowed to take incremental sick leave absences.  Rather, employees were required to take paid sick leave in unlawfully rigid "blocks" of paid sick time.

96.    Plaintiff is informed and believed that absences of 1 minute to 60 minutes were counted as one point; and absences of 61 minutes to 720 minutes were counted as two points.

97.    Accruing eleven points within a 12-month period constituted grounds for termination under The Unlawful Absence Policy.

98.    Under The Unlawful Absence Policy, points reset to zero annually on the employee's hire-date anniversary.

99.    Under The Unlawful Absence Policy, an employee needing less than eight hours leave for personal sickness and/or family sickness had no option to use two-hour increments of paid

1   leave.  Rather, an employee needing, for instance, three hours leave for personal sickness and/or

2   family sickness would be deemed to have been absent for the entire shift.

3        100.   Under The Unlawful Absence Policy, an employee could not carry sick days over to

4   the following year.  Under The Unlawful Absence Policy, allowable sick time was capped.

5        101.   Accordingly, Defendants BALL, and Does 1 through 20, inclusive, were legally

6   required to provide no less than "24 hours or three days in each year of employment."  (*Lab. Code*,

7   § 246(d); *id*, § 246(b)(4).)

8        102.   Accordingly, Defendants BALL, and Does 1 through 20, inclusive, were legally

9   required to provide employees with the option of taking sick leaves in increments of no more than

10  2 hours minimum.

11       103.   The Unlawful Absence Policy apparently interprets subdivision (b)(4)/(d)'s

12  provision for three-day leave as a safeharbor; *i.e.*, the Unlawful Absence Policy apparently views

13  compliance with subdivision (k)'s provision, which requires employers to authorize leave in

14  increments no greater than 2 hours, as satisfied if three full days have been provided as paid sick

15  leave.

16       104.   The apparent construction given by Defendants to the HWHFA is absurd on its face,

17  because if subdivisions (b)(4) & (d) indeed constituted a safeharbor to subdivision (k), then it would

18  necessarily follow that subdivision (k) only protects employees working shifts **of at least thirteen**

19  **hours**.  For employees working shifts of less than thirteen hours, there would be no need for a two-

20  hour maximum on increment usage, because, even with a four-hour usage increment, the employee

21  would still have sufficient time to spread over three days.

22       105.   Because it is an absurdity to suppose that subdivision (k) is a protection limited to

23  workers doing doubletime shifts, it necessarily follows that an employer's policy furnishing 3 days

24  paid leave does not, itself, constitute adequate compliance with the HWHFA.

25       106.   Rather, a HWHFA-compliant policy must furnish 24 paid hours, spreadable over *as*

26  *many as twelve days* (*i.e.*, if the employer imposes a two-hour usage increment); except that if the

27  employee's shift is less than eight hours, the employer does not need to give more than three full

28

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1   days of sick HWHFA time.

2         107.   Defendants BALL, and Does 1 through 20, inclusive, terminated Plaintiff based on

3   the pretextual basis that Plaintiff had, supposedly, accumulated 10 "points" in a year period, in

4   addition to the 3 HWHFA days taken by Plaintiff in that period.

5         108.   However, Plaintiff had been denied the option of taking HWHFA leave in

6   increments of less than 12 hours.

7         109.   If Plaintiff had been offered the option of taking HWHFA leave in increments of

8   less than 12 hours, Plaintiff would not have used all his HWHFA time within the twelve-month

9   period.

10         110.   Accordingly, Plaintiff was unlawfully terminated due to Defendants BALL, and

11   Does 1 through 20, inclusive, and all of them, refusing to allow Plaintiff to utilize statutory HWHFA

12   leave in increments of two-hours or less.

13         111.   Plaintiff's termination was, therefore, a "per se" violation of the HWHFA.  (*Lab.*

14   *Code* § 234.)

15         112.   Accordingly, Plaintiff is entitled to bring suit for reinstatement and actual damages.

16   (*Lab. Code* § 233(e); *id.*, § 248.5(e).)

17         113.   Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount

18   no less than $250,000.

19

20   **SEVENTH CAUSE OF ACTION**

21   **Violation of Healthy Workplaces, Healthy Families Act of 2014 (HWHFA)**

22   **By Plaintiff MARTIN as Private Attorney General**

23   **on Behalf of All Aggrieved Employees**

24   **against Defendants BALL and Does 1 through 20, Inclusive**

25         114.   Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

26         115.   Defendants BALL, and Does 1 through 20, inclusive, employed Plaintiff MARTIN

27   within California.  Defendants BALL, and Does 1 through 20, inclusive, employee hundreds of

28

1    other nonexempt employees in Fairfield California.

2        116.    Defendants BALL, and Does 1 through 20, inclusive, employed MARTIN, as well

3    as hundreds of other employees, <u>without</u> any applicable Collective Bargaining Agreement in

4    Defendants BALL's Fairfield food-can manufacturing facility, and, accordingly, Defendants

5    BALL, and Does 1 through 20, inclusive, were not exempt under section 245.5 of the *Labor Code*.

6        117.    Defendants BALL implemented an unlawful Sick Leave policy that failed to satisfy

7    the minimum requirements of California's HWHFA.  (*Lab. Code*, § 246(e).)

8        118.    Defendants BALL, and Does 1 through 20, inclusive, employed MARTIN, and

9    similarly-situated employees, in 12-hour shifts.

10       119.    Under the sick-leave policy ("The Unlawful Absence Policy") of Defendants BALL,

11   and Does 1 through 20, inclusive, employees were not allowed to take incremental sick leave

12   absences.  Rather, employees were required to take paid sick leave in unlawfully rigid "blocks" of

13   paid sick time.

14       120.    Plaintiff is informed and believed that absences of 1 minute to 60 minutes were

15   counted as one point; and absences of 61 minutes to 720 minutes were counted as two points.

16       121.    Accruing eleven points within a 12-month period constituted grounds for

17   termination under The Unlawful Absence Policy.

18       122.    Under The Unlawful Absence Policy, points reset to zero annually on the

19   employee's hire-date anniversary.

20       123.    Under The Unlawful Absence Policy, an employee needing less than eight hours

21   leave for personal sickness and/or family sickness had no option to use two-hour increments of paid

22   leave.  Rather, an employee needing, for instance, three hours leave for personal sickness and/or

23   family sickness would be deemed to have been absent for the entire shift.

24       124.    Under The Unlawful Absence Policy, an employee could not carry sick days over to

25   the following year.  Under The Unlawful Absence Policy, allowable sick time was capped.

26       125.    Accordingly, Defendants BALL, and Does 1 through 20, inclusive, were legally

27   required to provide no less than "24 hours or three days in each year of employment."  (*Lab. Code*,

28

1  § 246(d); *id*, § 246(b)(4).)

2      126.    Accordingly, Defendants BALL, and Does 1 through 20, inclusive, were legally

3  required to provide employees with the option of taking sick leaves in increments of no more than

4  2 hours minimum.

5      127.    The Unlawful Absence Policy apparently interprets subdivision (b)(4)/(d)'s

6  provision for three-day leave as a safeharbor; *i.e.*, the Unlawful Absence Policy apparently views

7  compliance with subdivision (k)'s provision, which requires employers to authorize leave in

8  increments no greater than 2 hours, as satisfied if three full days have been provided as paid sick

9  leave.

10      128.    The apparent construction given by Defendants to the HWHFA is absurd on its face,

11  because if subdivisions (b)(4) & (d) indeed constituted a safeharbor to subdivision (k), then it would

12  necessarily follow that subdivision (k) only protects employees working shifts **of at least thirteen**

13  **hours**.  For employees working shifts of less than thirteen hours, there would be no need for a two-

14  hour maximum on increment usage, because, even with a four-hour usage increment, the employee

15  would still have sufficient time to spread over three days.

16      129.    Because it is an absurdity to suppose that subdivision (k) is a protection limited to

17  workers doing doubletime shifts, it necessarily follows that an employer's policy furnishing 3 days

18  paid leave does not, itself, constitute adequate compliance with the HWHFA.

19      130.    Rather, a HWHFA-compliant policy must furnish 24 paid hours, spreadable over *as*

20  *many as twelve days* (*i.e.*, if the employer imposes a two-hour usage increment); except that if the

21  employee's shift is less than eight hours, the employer does not need to give more than three full

22  days of sick HWHFA time.

23      131.    Defendants BALL, and Does 1 through 20, inclusive, terminated Plaintiff based on

24  the pretextual basis that Plaintiff had, supposedly, accumulated 10 "points" in a year period, in

25  addition to the 3 HWHFA days taken by Plaintiff in that period.

26      132.    However, Plaintiff had been denied the option of taking HWHFA leave in

27  increments of less than 12 hours.

28

133.    Plaintiff seeks, on behalf of **all** aggrieved employees, injunctive remedies, reinstatement, and restitution.

134.    *Labor Code* section 248.5(e) modifies PAGA so as to provide that in a HWHFA PAGA suit, the remedies are **not** penalties; but, rather, the remedies are "equitable, injunctive, or restitutionary relief, and reasonable attorney's fees and costs."

135.    *Labor Code* section 248.5(e) provides:  "The Labor Commissioner or the Attorney General may bring a civil action in a court of competent jurisdiction against the employer or other person violating this article and, upon prevailing, shall be entitled to collect legal or equitable relief on behalf of the aggrieved as may be appropriate to remedy the violation, including reinstatement, backpay, the payment of sick days unlawfully withheld, the payment of an additional sum, not to exceed an aggregate penalty of four thousand dollars ($4,000), as liquidated damages in the amount of fifty dollars ($50) to each employee or person whose rights under this article were violated for each day or portion thereof that the violation occurred or continued, plus, if the employer has unlawfully withheld paid sick days to an employee, the dollar amount of paid sick days withheld from the employee multiplied by three; or two hundred fifty dollars ($250), whichever amount is greater; and reinstatement in employment or injunctive relief; and further shall be awarded reasonable attorney's fees and costs, provided, however, that any person or entity enforcing this article **on behalf of the public** as provided for under applicable state law shall, upon prevailing, be entitled **only** to equitable, injunctive, or restitutionary relief, and reasonable attorney's fees and costs."

136.    Because a UCL "public injunction," is, in fact, a private remedy sought on behalf of the individual plaintiff and not on behalf of the public, (*McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 960, 393 P.3d 85, 93 (2017) ("This reading would seem to authorize private individuals to proceed on behalf of the general public if they "compl[y] with Section 382 of the Code of Civil Procedure" . . . , which would conflict with the voters' stated intent "that only the California Attorney General and local public officials be authorized to file and prosecute actions on behalf of the general public"), the phrase "on behalf of the public as provided for under applicable state law" necessarily

1  refers to the Private Attorney General Act, *Labor Code* §§ 2698 *et seq.*

2     137.   Because "the Legislature is presumed to be aware of existing laws and judicial

3  decisions and to have enacted or amended statutes in light of this knowledge," (*People v. Overstreet*

4  (1986) 42 Cal.3d 891, 897); and because, at the time of the 2014 enactment of section 248.5 through

5  A.B. 1522, Stats. 2104, ch. 317, prevailing law allowed recovering restitutionary remedies under

6  PAGA, (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112; *Caliber*

7  *Bodyworks, Inc. v. Superior Court* (2005) 134 Cal.App.4th 365; *Bradstreet v. Wong* (2008) 161

8  Cal.App.4th 1440), the plain language of section 248.5 must be properly construed to allow the

9  recovery of "equitable, injunctive, or restitutionary relief, and reasonable attorney's fees and costs,"

10  by a PAGA representative.

11     138.   Any other meaning would render nugatory and surplusage section 248.5(e)'s

12  authorization to seek "restitution" "on behalf of the public as provided for under applicable state

13  law."

14     139.   Plaintiff MARTIN accordingly seeks equitable, injunctive and restitutionary

15  remedies under section 248.5(e) and PAGA.

16

17              **<u>EIGHTH CAUSE OF ACTION</u>**

18                 ***<u>TAMENY</u>***

19       **<u>By Plaintiff MARTIN against Defendants BALL</u>**

20           **<u>and Does 1 through 20, Inclusive</u>**

21     140.   Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph

22     141.   Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

23  inclusive.

24     142.   On no later than November 28, 2018, Plaintiff MARTIN became eligible to no less

25  than 12 weeks job-protected leave.

26     143.   Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN

27  had a torn rotator cuff,  constituting a musculoskeletal physical disability and/or other disability

28

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1  under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities

2  of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . .

3  musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

4       144.    Defendants BALL, and Does 1 through 20, believed that Plaintiff MARTIN, being

5  injured, would potentially seek to take CFRA leave, and, for such reason, Defendants BALL, and

6  Does 1 through 20, terminated Plaintiff MARTIN without providing him reasonable

7  accommodations and/or without providing him a reasonable opportunity to challenge his

8  termination and/or through misrepresenting its point policy, so as to preclude MARTIN's ability to

9  take protected leave.

10       145.    The belief by Defendants BALL, and Does 1 through 20, that Plaintiff MARTIN

11  was likely to seek CFRA leave was a substantial motivating reason for Plaintiff MARTIN being

12  discharged and/or subjected to an adverse employment action.

13       146.    Plaintiff MARTIN was discharged and/or subjected to an adverse employment

14  action because he was disabled and/or because Defendants BALL, and Does 1 through 20,

15  inclusive, perceived Plaintiff MARTIN as being disabled.

16       147.    Additionally, Defendants BALL, and Does 1 through 20, inclusive, terminated

17  Plaintiff based on the pretextual basis that Plaintiff had, supposedly, accumulated 10 "points" in a

18  year period, in addition to the 3 HWHFA days taken by Plaintiff in that period.

19       148.    However, Plaintiff had been denied the option of taking HWHFA leave in

20  increments of less than 12 hours.

21       149.    If Plaintiff had been offered the option of taking HWHFA leave in increments of

22  less than 12 hours, Plaintiff would not have used all his HWHFA time within the twelve-month

23  period.

24       150.    Accordingly, Plaintiff was unlawfully terminated due to Defendants BALL, and

25  Does 1 through 20, inclusive, and all of them, refusing to allow Plaintiff to utilize statutory HWHFA

26  leave in increments of two-hours or less.

27       151.    Plaintiff's termination was, therefore, a "per se" violation of the HWHFA. (*Lab.*

28

1 | *Code* § 234.)

2 |      152.    Plaintiff's termination was a violation of public policy in that Plaintiff's termination

3 | violated the public policy of California's sick-time laws, through denying Plaintiff sick time and

4 | then terminating Plaintiff on that basis; in that Plaintiff's termination was motivated by an intent to

5 | deprive Plaintiff's CFRA rights from vesting and accruing; in that Plaintiff's termination was

6 | motivated by an intent to discriminate against Plaintiff due to Plaintiff being disabled and/or being

7 | perceived as disabled; in that Plaintiff's termination was motivated by an intent to avoid

8 | accommodating Plaintiff's disability; in that Defendants, terminated Plaintiff due to the injury

9 | incurred in the Defendants' service, thereby violating fundamental public policy as articulated in

10 | *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 661.

11 |      153.    Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1

12 | through 20, inclusive.

13 |      154.    The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a

14 | substantial factor in causing MARTIN's harm.

15 |      155.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount

16 | no less than $250,000.

17 |      156.    Said conduct by Defendants, and Does 1 through 20, and each of them, was

18 | intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's

19 | rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that

20 | renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such

21 | sum that shall be determined at the time of trial.

22 |

23 | **NINTH CAUSE OF ACTION**

24 | **FRAUD**

25 | **By Plaintiff MARTIN against Defendants BALL and BRAGER**

26 | **and Does 1 through 20, Inclusive**

27 |      157.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

28 |

1      158.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

2  inclusive.

3      159.    On or about November 20, 2018, Plaintiff MARTIN went to Defendants BALL's

4  Workers Compensation doctor during day hours.

5      160.    On that week, MARTIN had been assigned a 6 PM to 6 AM shift.

6      161.    After going to the Workers Compensation Doctor, MARTIN returned to work at

7  about 11 a.m. and advised that he would report to work at about 6 P.M.

8      162.    Defendant BRAGER, and Does 1 through 20, inclusive, as agent for, and in the

9  scope of his employment for, Defendants BALL and Does 1 through 20, inclusive, advised Plaintiff

10  that he could not legally come to work without having had an eight-hour break between shifts.

11      163.    Plaintiff offered to report to work at 7 PM.

12      164.    Defendant BRAGER advised that Plaintiff would be docked one point if Plaintiff

13  failed to report to work at 6 PM; and that, because Plaintiff had gone to a workers compensation

14  doctor on company time with less than 8 hours remaining to his next shift, Plaintiff would, no matter

15  what, be docked one point.

16      165.    Paragraphs 162–164 are alleged for purposes of providing background information,

17  only; and are not alleged as a basis of liability, whether in the instant cause of action or any cause

18  of action.

19      166.    Plaintiff then asked BRAGER if Plaintiff would be terminated upon accumulating

20  10 points; or whether the policy allowed accumulating 10 points, with termination resulting on the

21  11th point.

22      167.    At the time, Plaintiff's points under the attendance policy would reset to zero on

23  November 28, 2018, eight days thereafter.  Additionally, Plaintiff would become entitled to CFRA

24  leave at such time.

25      168.    Defendant BRAGER, and Does 1 through 20, inclusive, in the scope of his

26  employment for, Defendants BALL and Does 1 through 20, inclusive, advised Plaintiff that he

27  could accrue 10 points without termination, and that termination would result on the 11th point.

28

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

169.    Plaintiff alleges, on information and belief, that BRAGER, and Does 1 through 20, inclusive, knew that Plaintiff would be terminated upon accruing a tenth point; and that Defendant BRAGGER, and Does 1 through 20, inclusive, made such representation knowing it to be false and/or made the representation recklessly and without regard for its truth.

170.    Plaintiff alleges, on information and belief, that BRAGER, and Does 1 through 20, inclusive, made such representation in order for Plaintiff to rely thereon and incur points that would result in Plaintiff being terminated.

171.    Plaintiff reasonably relied on the representations by Defendants BRAGER and Does 1 through 20.

172.    Plaintiff is also informed that nonparty RICHARD SEAL performed the "Manager Evaluations" for Plaintiff.  Based on such facts, as well as other facts, Plaintiff is informed and believes that SEAL was the manager with hiring-firing authority over Plaintiff, and that Defendant BRAGER did **not** have sufficient supervisory autonomy over Plaintiff so as to terminate Plaintiff unilaterally, and BRAGER could not do so absent prior approval from SEAL and/or others.

173.    Consequently, BRAGER did not have capacity to exercise BALL's potential rights to terminate Plaintiff, because BRAGER was not an authorized agent of BALL to exercise such rights.

174.    Rather, BRAGER tortiously interfered with Plaintiff's contract with the BALL Defendants, when BRAGER fraudulently misrepresented and/or negligently misrepresented facts to Plaintiff that BRAGER knew and/or should have known would reasonably result—and did result—in damage to Plaintiff.

175.    Although Plaintiff alleges, based on information and belief, that BRAGER lacked sufficient supervisory autonomy over Plaintiff so as to *terminate* Plaintiff, BRAGER nevertheless made the above-alleged misrepresentations in the scope and course of his employment.  Resultantly, Defendants BALL are vicariously liable for BRAGER's above-alleged torts.

176.    The conduct of Defendants BRAGER, and Does 1 through 20, inclusive, (and, vicariously, Defendants BALL) were a substantial factor in causing MARTIN's harm.

1    177.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount

2    no less than $250,000.

3    178.    Said conduct by Defendants, and Does 1 through 20, and each of them, was

4    intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's

5    rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that

6    renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such

7    sum that shall be determined at the time of trial.

8

9                         **TENTH CAUSE OF ACTION**

10                        **NEGLIGENT MISREPRESENTATION**

11              **By Plaintiff MARTIN against Defendants BALL and BRAGGER**

12                        **and Does 1 through 20, Inclusive**

13    179.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

14    180.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

15    inclusive.

16    181.    On or about November 20, 2018, Plaintiff MARTIN went to Defendants BALL's

17    Workers Compensation doctor during day hours.

18    182.    On that week, MARTIN had been assigned a 6 PM to 6 AM shift.

19    183.    After going to the Workers Compensation Doctor, MARTIN returned to work at

20    about 11 a.m. and advised that he would report to work at about 6 P.M.

21    184.    Defendant BRAGER, and Does 1 through 20, inclusive, as agent for, and in the

22    scope of his employment for, Defendants BALL and Does 1 through 20, inclusive, advised Plaintiff

23    that he could not legally come to work without having had an eight-hour break between shifts.

24    185.    Plaintiff offered to report to work at 7 PM.

25    186.    Defendant BRAGER advised that Plaintiff would be docked one point if Plaintiff

26    failed to report to work at 6 PM; and that, because Plaintiff had gone to a workers compensation

27    doctor on company time with less than 8 hours remaining to his next shift, Plaintiff would, no matter

28

**FIRST AMENDED CLASS COMPLAINT FOR DAMAGES**
**JURY TRIAL DEMANDED**

1    what, be docked one point.

2          187.    Paragraphs 184–186 are alleged for purposes of providing background information,

3    only; and are not alleged as a basis of liability, whether in the instant cause of action or any cause

4    of action.

5          188.    Plaintiff then asked BRAGER if Plaintiff would be terminated upon accumulating

6    10 points; or whether the policy allowed accumulating 10 points, with termination resulting on the

7    11th point.

8          189.    At the time, Plaintiff's points under the attendance policy would reset to zero on

9    November 28, 2018, eight days thereafter.  Additionally, Plaintiff would become entitled to CFRA

10   leave at such time.

11         190.    Defendant BRAGER, and Does 1 through 20, inclusive, as agent for Defendants

12   BALL and Does 1 through 20, inclusive, advised Plaintiff that he could accrue 10 points without

13   termination, and that termination would result on the 11th point.

14         191.    Defendant BRAGER owed Plaintiff a legal duty not to misrepresent its employment

15   policies, which duties arose from the fiduciary duties of employees to each other within the

16   workplace and/or which arose from the trust reposed by employees in each other to work

17   collaboratively and in furtherance of the employer's business.

18         192.    Even though Defendant BRAGER, and Does 1 through 20, inclusive, may have

19   honestly believed that the representation was true, Defendant BRAGER, and Does 1 through 20,

20   inclusive, had no reasonable grounds for believing the representation was true when making the

21   representations.

22         193.    Plaintiff is also informed that nonparty RICHARD SEAL performed the "Manager

23   Evaluations" for Plaintiff.  Based on such facts, as well as other facts, Plaintiff is informed and

24   believes that SEAL was the manager with hiring-firing authority over Plaintiff, and that Defendant

25   BRAGER did **not** have sufficient supervisory autonomy over Plaintiff so as to terminate Plaintiff

26   unilaterally, and BRAGER could not do so absent prior approval from SEAL and/or others.

27         194.    Consequently, BRAGER did not have capacity to exercise BALL's potential rights

28

1  to terminate Plaintiff, because BRAGER was not an authorized agent of BALL to exercise such

2  rights.

3      195.   Rather, BRAGER tortiously interfered with Plaintiff's contract with the BALL

4  Defendants, when BRAGER negligently misrepresented facts to Plaintiff that BRAGER knew

5  and/or should have known would reasonably result—and did result—in damage to Plaintiff.

6      196.   Although Plaintiff alleges, based on information and belief, that BRAGER lacked

7  sufficient supervisory autonomy over Plaintiff so as to *terminate* Plaintiff, BRAGER nevertheless

8  made the above-alleged misrepresentations in the scope and course of his employment.  Resultantly,

9  Defendants BALL are vicariously liable for BRAGER's above-alleged torts.

10     197.   The conduct of Defendants BRAGER, and Does 1 through 20, inclusive, (and,

11  vicariously, Defendants BALL) were a substantial factor in causing MARTIN's harm.

12     198.   Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount

13  no less than $250,000.

14

15              **ELVENTH CAUSE OF ACTION**

16          **FAILURE TO PAY OVERTIME — CLASS ACTION**

17  **By Plaintiff MARTIN and all other similarly situated against Defendants BALL**

18              **and Does 1 through 20, Inclusive**

19     199.   Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

20     200.   Plaintiff brings this action on behalf of Plaintiff and on behalf of all others similarly

21  situated (the "Class"), pursuant to § 382 of the *Code of Civil Procedure*.

22     201.   Plaintiffs seek to represent all nonexempt employees of Defendants BALL in the

23  Fairfield, CA manufacturing facility of the Defendants BALL, from three years prior to the filing

24  of the state-court complaint in the removed action, through until the present date, and who were

25  eligible to receive annual bonuses in or around February.

26     202.   Plaintiffs reserve the right to amend or modify the class description, with greater

27  specificity, by division into subclasses, or by limitation to particular issues.

28

203.    **Numerosity**.  Plaintiff is informed and believed that there are approximately 200 members in the putative class.

204.    **Commonality**.  Plaintiff is informed and believes that the class members are generally bound together through preexisting or continuing legal relationships, or by some significant common trait, in that all class members were paid overtime and bonuses pursuant to the same practice and/or policy and/or procedure.

205.    **Typicality**.  Plaintiff is informed and believes that his claims are typical of the proposed classes, in that Plaintiff's claims are typical of *all* unlawfully withheld overtime—both as to overtime unlawfully withheld through failure to calculate paid February bonuses into the regular rate, as well as to overtime unlawfully withheld through failure to calculate unpaid February bonuses into the regular rate.

206.    Plaintiffs are informed and believe that Plaintiffs and all members of the putative Classes sustained injuries and damages, arising out of and caused by Defendant's course of conduct in violating laws and/or regulations that have the force and effect of law and/or statutes as alleged herein.

207.    **Adequacy**.  Plaintiffs will fairly and adequately represent and protect the interests of the members of the proposed Class Counsel who represent Plaintiff and the Proposed Classes are competent and experienced in litigating employment class actions.

208.    Furthermore, a motion for Preliminary Approval is pending before the Eastern District of California, and which Settlement fails to provide compensation for the putative class for unpaid overtime, thereby demonstrating the exigent need for representation of the class.

209.    **Superiority of Class Proceedings.**  The joinder of all Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The Class can be identified through Defendant's records or Defendant's agents' records.

210.    Plaintiffs are informed and believes that each member of the Proposed Classes has been damaged and is entitled to recovery by reason of Defendants' same practice and/or policy

and/or procedure of illegally failing to pay required overtime, through Defendants' use of a non *bona fide* bonus plan; and, consequently, failing to provide accurate itemized wage statements, and failing to pay all wages upon resignation or termination.

211.   Plaintiff is informed and believes that class action treatment will allow these similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system.  Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action and/or that would preclude its maintenance as a class action.

212.   Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20, inclusive.

213.   Defendant's Fairfield-plant employees were required to work four "12s" weekly.

214.   The four 12s would be 8 hours regular time, and four hours overtime.

215.   Additionally, a certain number of employees were required to work 5 12s and/or 6 12s.  If insufficient employees scheduled themselves for 5 12s and/or 6 12s, then employees would be involuntarily assigned to such schedules.

216.   At about February time each year, Defendants BALL and Does 1 through 20 paid its employees bonuses as regular, expected and promised compensation.

217.   Plaintiff is informed and believes that the February bonuses were calculated through computing the total overtime hours worked in the preceding year by the relevant employee, **multiplied by** a varying number that varied, year to year, based on financial performance of an unknown sector/unit within Defendants' enterprise.

218.   The average bonus would be in the low thousands and would represent a significant portion of total annual compensation.

219.   The annual bonuses were discussed by employees and managers and constituted part of Defendants' employees' salary expectations.

220.   On information and belief, Defendants BALL and Does 1 through 20, inclusive, paid such bonuses so as to induce their employees to provide more faithful and efficient service.  *See*

1    DLSE Manual, § 35.1, *citing Duffy Bros. v. Bing& Bing*, 217 App.Div. 10, 215 N.Y.S. 755, 758

2    (1926).

3         221.    On information and belief, the regular payment of the bonus by Defendants BALL

4    and Does 1 through 20, inclusive, in previous years ripened into an implied contract for such

5    compensation.  DLSE Manual, § 35.4.3, *citing D.L.S.E. v. Transpacific Transportation Co.* (1979)

6    88 Cal.App.3d 823.

7         222.    On information and belief, Defendants BALL and Does 1 through 20, inclusive,

8    made representations regarding the bonus, which representations constituted a unilateral contract

9    which could not be revoked after the performance of overtime hours; and/or which created a vested

10   right in such bonus with each and every hour of overtime worked.   DLSE Manual, § 31.2.10.1,

11   *citing Lucien v. Allstate Trucking* (1981) 116 Cal.App.3d 972.

12        223.    Defendants Ball were required to calculate the bonus within the relevant employee's

13   regular rate, because, amongst other reasons:

14        a.   the bonus was not paid in the pay period, and, instead, would only be paid if the

15             employee remained with the company at the time when the bonus was paid out.  This

16             rendered the bonus ineligible for exemption under 29 C.F.R. § 778.310; *see also*

17             DOL's Field Operations Handbook, Ch. 32, ¶ 32j06; *Walling v. Youngerman-*

18             *Reynolds Hardwood Co*., 325 U.S. 419, 423–24, 65 S.Ct. 1242, 89 L.Ed. 1705

19             (1945); *see also* DLSE Manual, § 35.1, *citing Duffy Bros. v. Bing& Bing*, 217

20             App.Div. 10, 215 N.Y.S. 755, 758 (1926).

21        b.   the bonus was not a set rate, but tied to economic performance of a unit within

22             Defendant BALL, thereby rendering the bonus ineligible for exemption under 29

23             C.F.R. § 778.310.

24        c.   The fact of the bonus was a set and established promise and/or expectation, and

25             therefore, despite the potential for fluctuation in amount, the bonus was ineligible

26             for exemption under 29 C.F.R. § 778.211 (requiring "**both** the fact that payment is

27             to be made **and** the amount of the payment are determined at the sole discretion of

28

the employer at or near the end of the period and not pursuant to any prior contract, agreement, or promise causing the employee to expect such payments regularly").

d.    Plaintiff is informed and believes that Defendants BALL bonus system did not constitute a "bona fide plan." (*See* 29 C.F.R. §549.1(c),(d)(1),(e)(1); *id*., § 549.2(a) and (e); Dept. of Labor, FLSA Opinion Letter 1999.10.29, p. 2 (1999 WL 33210911); *McLaughlin v. McGee Bothers* (WDNC 1988) 681 F.Supp. 1 117, 1134.

224.    Accordingly, as a matter of law, the bonus was **not** paid as a premium for overtime, and was required to be included in the regular rate.

225.    Additionally, and as a **<u>separate</u>** theory of liability, Plaintiff alleges that, on information and belief, each work week included, at minimum, sixteen hours of mandatory overtime work, for which overtime was paid but attendance was required. Plaintiff further alleges, based on information and belief, that the portions of the February bonus attributable for the required sixteen hours of mandatory overtime work need to be allocated solely towards increasing the 32 hours of nonovertime hours; and, based on that regular rate, overtime had to be paid at time an half. *See generally Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 549.

226.    Furthermore, on information and belief, the February bonus was not proportionately increased for doubletime and doubletime and a half. For instance, seventh-day shifts were paid as doubletime, and holidays were paid as doubletime and a half.

227.    On information and belief, the February bonus was simply allocated based on overtime hours, hour per hour, and did not increase for doubletime hours and doubletime-and-a-half hours. Accordingly, the bonus pay was not a true overtime premium, but instead represented base pay for regular hours misapplied to the "premium" so as to artificially depress the regular rate.

228.    Defendants BALL and Does 1 through 20, inclusive, were able to subvert the policies discouraging the use of overtime, through paying their employees an amount calculated to induce their continued loyalty, while reducing the overtime paid thereon.

229.    Plaintiff MARTIN and the putative class have been harmed in an amount to be proven at trial.

**TWELVTH CAUSE OF ACTION**

**FAILURE TO PAY OVERTIME**

**By Plaintiff MARTIN as Private Attorney General**

**on Behalf of All Aggrieved Employees**

**against Defendants BALL and Does 1 through 20, Inclusive**

230.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

231.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20, inclusive.

232.    Because Plaintiff MARTIN can properly recover unpaid overtime, Plaintiff MARTIN remains aggrieved under *Kim v. Reins International California, Inc*. (2020) 9 Cal. 5th 73.

233.    Furthermore, because MARTIN is entitled to reinstatement under, amongst other grounds, the HWHFA, MARTIN continues to be aggrieved by the violations of Defendants BALL and Does 1 through 20, inclusive.

234.    Section 558 provides for the recovery of $50 for each underpaid employee for the initial pay period; and $100 for each pay period thereafter.

235.    To the extent applicable, Plaintiff has satisfied the requirements of *Labor Code* section 2699.3.

236.    Furthermore, the filing of the *Westbrook* class action, and, specifically, the First Amended Complaint filed in that class action, has tolled the statute of class members since at least September 2015.

**THIRTEENTH CAUSE OF ACTION**

**FAILURE TO PAY WAGES OWED**

**By Plaintiff MARTIN against Defendants BALL**

**and Does 1 through 20, Inclusive**

237.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

238.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

1    inclusive.

2       239.    Defendant's Fairfield-plant employees were required to work four "12s" weekly.

3       240.    The four 12s would be 8 hours regular time, and four hours overtime.

4       241.    Additionally, a certain number of employees were required to work 5 12s and/or 6

5    12s. If insufficient employees scheduled themselves for 5 12s and/or 6 12s, then employees would

6    be involuntarily assigned to such schedules.

7       242.    At about February time each year, Defendants BALL and Does 1 through 20 paid

8    its employees bonuses based on total overtime hours worked in the preceding year. The average

9    bonus would be in the low thousands and would represent a significant portion of total annual

10   compensation.

11      243.    The annual bonuses were discussed by employees and managers and were part of

12   Defendants' employees salary expectations.

13      244.    On information and belief, Defendants BALL and Does 1 through 20, inclusive, paid

14   bonuses so as to induce their employees to provide more faithful and efficient service. DLSE

15   Manual, § 35.1, *citing Duffy Bros. v. Bing& Bing*, 217 App.Div. 10, 215 N.Y.S. 755, 758 (1926).

16      245.    On information and belief, the regular payment of the bonus by Defendants BALL

17   and Does 1 through 20, inclusive, in previous years ripened into an implied contract for such

18   compensation. DLSE Manual, § 35.4.3, *citing D.L.S.E. v. Transpacific Transportation Co.* (1979)

19   88 Cal.App.3d 823.

20      246.    On information and belief, Defendants BALL and Does 1 through 20, inclusive,

21   made representations regarding the bonus, which representations constituted a unilateral contract

22   which could not be revoked after the performance of overtime hours; and/or which created a vested

23   right in such bonus with each and every hour of overtime worked.  DLSE Manual, § 31.2.10.1,

24   *citing Lucien v. Allstate Trucking* (1981) 116 Cal.App.3d 972.

25      247.    Plaintiff MARTIN did not voluntarily quit his position.

26      248.    Plaintiff MARTIN was terminated after commencing performance of the unilateral

27   contract for the bonus and/or after his bonus vested.

28

1    249.    Plaintiff MARTIN was not paid, to date, his vested bonus.

2    250.    Plaintiff MARTIN has been harmed in an amount to be proven at trial.

3    **FOURTEENTH CAUSE OF ACTION**

4    **FAILURE TO PAY WAGES OWED**

5    **By Plaintiff MARTIN as Private Attorney General**

6    **on Behalf of All Aggrieved Employees**

7    **against Defendants BALL and Does 1 through 20, Inclusive**

8    251.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

9    252.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,
10   inclusive.

11   253.    Because Plaintiff MARTIN can properly recover unpaid wages, Plaintiff MARTIN
12   remains aggrieved under *Kim v. Reins International California, Inc*. (2020) 9 Cal. 5th 73.

13   254.    Furthermore, because MARTIN is entitled to reinstatement under, amongst other
14   grounds, the HWHFA, MARTIN continues to be aggrieved by the violations of Defendants BALL
15   and Does 1 through 20, inclusive.

16   255.    Section 558 provides for the recovery of $50 for each underpaid employee for the
17   initial pay period; and $100 for each pay period thereafter.

18   256.    To the extent applicable, Plaintiff has satisfied the requirements of *Labor Code*
19   section 2699.3.

20   257.    Furthermore, the filing of the *Westbrook* class action, and, specifically, the First
21   Amended Complaint filed in that class action, has tolled the statute of class members since at least
22   September 2015.

23   ///

24   ///

25   ///

26   ///

27   ///

28

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1

**FIFTEENTH CAUSE OF ACTION**

2

**WAITING TIME PENALTIES**

3

**By Plaintiff MARTIN against Defendants BALL**

4

**and Does 1 through 20, Inclusive**

5    258.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

6    259.    Plaintiff MARTIN did not voluntarily quit his position.

7    260.    Plaintiff MARTIN was terminated after commencing performance of the unilateral

8    contract for the bonus and/or after his bonus vested.

9    261.    Plaintiff MARTIN was not paid, to date, his vested bonus.

10    262.    Additionally, Plaintiff MARTIN has not been paid all overtime owed.

11    263.    Additionally, Plaintiff MARTIN was not paid all owed wages at the time of

12    termination.

13    264.    Plaintiff MARTIN was not paid the applicable 30-day pay under section 203 of the

14    *Labor Code*.

15    265.    Plaintiff MARTIN was paid late; and, even then, Plaintiff MARTIN was paid his

16    supposedly-remaining wages with a rubber check that bounced.

17    266.    Plaintiff MARTIN was not paid the applicable 30-day pay under section 203.1 of

18    the *Labor Code*.

19    267.    Plaintiff MARTIN has been harmed in an amount to be proven at trial.

20

**SIXTEENTH CAUSE OF ACTION**

21

**WAITING TIME PENALTIES**

22

**By Plaintiff MARTIN as Private Attorney General**

23

**on Behalf of All Aggrieved Employees**

24

**against Defendants BALL and Does 1 through 20, Inclusive**

25    268.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

26    269.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

27    inclusive.

28

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

270.   Because Plaintiff MARTIN can properly recover unpaid wages, Plaintiff MARTIN remains aggrieved under *Kim v. Reins International California, Inc*. (2020) 9 Cal. 5th 73.

271.   Because Plaintiff MARTIN can recover within three years of the last payment of wages, *Labor Code* § 203(b), MARTIN remains aggrieved.

272.   Furthermore, because MARTIN is entitled to reinstatement under, amongst other grounds, the HWHFA, MARTIN continues to be aggrieved by the violations of Defendants BALL and Does 1 through 20, inclusive.

273.   To the extent applicable, Plaintiff has satisfied the requirements of *Labor Code* section 2699.3.

274.   Furthermore, the filing of the *Westbrook* class action, and, specifically, the First Amended Complaint filed in that class action, has tolled the statute of class members since at least September 2015.

### SEVENTEENTH CAUSE OF ACTION

### INACCURATE WAGE STATEMENTS

### By Plaintiff MARTIN against Defendants BALL

### and Does 1 through 20, Inclusive

275.   Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

276.   Defendants BALL and Does 1 through 20, and all of them, improperly calculated the February bonus as constituting an overtime premium, despite the fact that, amongst other matters, the February bonus was not actually paid as compensation for overtime but as a retention/loyalty incentive/award.

277.   Consequently, Defendants BALL and Does 1 through 20, and all of them, improperly calculated the regular rate by excluding the February bonus.

278.   For such reason, amongst others, Defendants BALL and Does 1 through 20, and all of them, failed to furnish accurate wage statements in compliance with § 226 of the *Labor Code*.

279.   Furthermore, Defendants BALL and Does 1 through 20, and all of them, failed to provide itemized wage statements regularly, and, oftentimes, Plaintiff MARTIN would be handed

1    a check-deposit copy, hard copy, by his supervisor, without an itemized wage statement to

2    accompany such check-deposit copy.

3        280.    Furthermore, Defendants BALL and Does 1 through 20, and all of them, failed to

4    accurately identify the legal name of the employer on Plaintiff's pay stubs.

5        281.    For instance, Defendants BALL and Does 1 through 20, and all of them,

6    misidentified Plaintiff's employer as the non-existent "BALL METAL BEVERAGE

7    CONTAINER."

8        282.    No entity has registered "BALL METAL BEVERAGE CONTAINER" as a

9    fictitious business name with Solano County.

10       283.    Additionally, Plaintiff was actually employed by BALL CORPORATION.

11       284.    BALL CORPORATION was the entity that opposed Plaintiff's EDD claim.

12       285.    Plaintiff MARTIN seeks statutory penalties and damages, as authorized by law.

13                          **EIGHTEENTH CAUSE OF ACTION**

14                          **INACCURATE WAGE STATEMENTS**

15                     **By Plaintiff MARTIN as Private Attorney General**

16                          **on Behalf of All Aggrieved Employees**

17               **against Defendants BALL and Does 1 through 20, Inclusive**

18       286.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

19       287.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

20   inclusive.

21       288.    Because the penalty provided for in section 226.3 is discretionary, it may be

22   recovered for a least three years after the last violation.  (*Jensen v. BMW of North America, Inc.*

23   (1995) 35 Cal.App.4th 112, 133.)

24       289.    Furthermore, because MARTIN is entitled to reinstatement under, amongst other

25   grounds, the HWHFA, MARTIN continues to be aggrieved by the violations of Defendants BALL

26   and Does 1 through 20, inclusive.

27       290.    To the extent applicable, Plaintiff has satisfied the requirements of *Labor Code*

28

1    section 2699.3.

2        291.    Furthermore, the filing of the *Westbrook* class action, and, specifically, the First

3    Amended Complaint filed in that class action, has tolled the statute of class members since at least

4    September 2015.

5    **NINETEENTH CAUSE OF ACTION**

6    ***LABOR CODE* §§ 6300 *et seq.***

7    **By Plaintiff MARTIN as Private Attorney General**

8    **on Behalf of All Aggrieved Employees**

9    **against Defendants BALL and Does 1 through 20, Inclusive**

10        292.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

11        293.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

12    inclusive.

13        294.    On November 6, 2018, Plaintiff MARTIN was injured at Ball Corporation's

14    Fairfield manufacturing facility while lowering a hopper of manufactured cans.

15        295.    Plaintiff MARTIN was reported that he was injured. However, his supervisor,

16    Claude Vaughan, gave him ibuprofen, temporarily placed MARTIN on light-duty work, and then

17    ordered Plaintiff MARTIN was back to work.

18        296.    Finally, Plaintiff MARTIN advised Vaughan that unless he was provided medical

19    assistance, he would leave work and work it out himself. Only after MARTIN made this ultimatum,

20    MARTIN'S supervisors sent him to meet with a Human Resources representative. The HR

21    representative took MARTIN to a hospital where MARTIN was diagnosed with a pulled muscle

22    behind his rotator cuff.

23        297.    Even though MARTIN had been diagnosed with an apparent RMI ergonomic injury,

24    and HR knew of such facts, MARTIN is informed and believes that Ball failed to investigate the

25    circumstances of MARTIN'S injury or to otherwise follow the requirements of 8 C.C.R. § 5110.

26        298.    Plaintiff MARTIN accordingly seeks an injunction compelling the compliance of

27    Defendants BALL and Does 1 through 20, inclusive, with California's Repetitive Motion Injuries

28

1  law, 8 C.C.R. § 5110 and similar authority.

2      299.    Furthermore, part of Plaintiff MARTIN's work obligations involved the regular use

3  and handling of Industrial Coatings ("IC"), particularly Valspar. In violation of 8 C.C.R. § 5139 *et*

4  *seq.,* Plaintiff MARTIN was required to work in a confined area with significant IC fumes, without

5  a facemask or other adequate protective clothing.

6      300.    Plaintiff MARTIN experienced significant coughing due to such fumes. On one

7  occasion, a significant spill of IC occurred, and Plaintiff MARTIN, in violation of 8 C.C.R. §§ 5189

8  & 5192 was required to clean the spill without adequate protective gear, guidance, or procedures.

9  Plaintiff MARTIN's mouth skin entirely peeled due to the fume exposures.

10     301.    Plaintiff MARTIN accordingly seeks an injunction compelling the compliance of

11 Defendants BALL and Does 1 through 20, inclusive, with California's Repetitive Motion Injuries

12 law, 8 C.C.R. § 5139, 5189 & 5192, and similar authority.

13              **TWENTIETH CAUSE OF ACTION — CLASS**

14                   ***Bus. & Prof. §§ 17200 et seq.***

15                        **By Plaintiff MARTIN**

16         **against Defendants BALL and Does 1 through 20, Inclusive**

17     302.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

18     303.    Defendants BALL, and Does 1 through 20, and each of them, have engaged and

19 continue to engage in unfair and/or unlawful business practices in California in violation of

20 *California Business and Professions Code* § 17200 *et seq.,* by failing to properly pay all minimum

21 and overtime wages; and in committing the various wrongdoings, torts, statutory violations, and

22 unlawful, unfair, and fraudulent business practices herein.

23     304.    On information and belief, Defendants BALL, and Does 1 through 20, and each of

24 them, have engaged and continue to engage in unfair and/or unlawful business practices by failing

25 to provide adequate FEHA training and by failing to provide reasonable oversight against unlawful

26 practices within the various Defendants' organizations.

27     305.    Defendants BALL, and Does 1 through 20, and each of their, utilization of these

28

1  unfair and/or unlawful business practices has deprived Plaintiff of compensation to which she is

2  legally entitled, which constitutes unfair and/or unlawful competition as such practices have

3  procured Defendants, and Does 1 through 20, and each of them, an unfair advantage over

4  Defendants' competitors who have been and/or are currently employing workers and attempting

5  to do so in honest compliance with applicable wage and hour laws.

6        306.    Defendants BALL utilization of these unfair and/or unlawful business practices

7  constitutes a public nuisance.

8        307.    Plaintiff is a victim of Defendant's unfair and/or unlawful conduct alleged herein,

9  and Plaintiff seeks full restitution of monies, as necessary and according to proof, to restore any

10  and all monies withheld, acquired and/or converted by Defendants BALL pursuant to *Business and*

11  *Professions Code* §§ 17203 and 17208. 96.

12        308.    Defendants BALL was compelled to retain the services of counsel to file this court

13  action to protect his interests and those of the public, to obtain injunctive relief on behalf of the

14  public, and to enforce important rights affecting the public interest.  Plaintiff has thereby incurred

15  the financial burden of attorneys' fees and costs, which he is entitled to recover under section 1021.5

16  of the *Code of Civil Procedure*.

17                              **PRAYER FOR RELIEF**

18        Plaintiff RICHARD MARTIN, individually, and on behalf of all other similarly situated,

19  accordingly prays for the following relief against BALL CORPORATION, an Indiana Corporation;

20  BALL METAL BEVERAGE CONTAINER CORP., a Colorado Corporation; FRANK BRAGER,

21  an Individual; and DOES 1 through 20, inclusive, as follows:

22        (1)    For all compensatory damages incurred, in such amount as proven at trial, in the

23              timeout of unpaid wages and/or overtime not paid to Plaintiff and each other Member

24              of the Proposed Classes from at least four (4) years prior to the filing of the

25              *Westbrook* action through the present as may he proves;

26        (2)    For compensatory damages, including back pay, front pay, and/or future earnings,

27              in an amount no less than $250,000;

28

1       (3)     For all special and consequential damages;

2       (4)     For reinstatement;

3       (5)     For restitution;

4       (6)     For punitive damages,

5       (7)     For all attorneys' fees incurred;

6       (8)     For all costs of suit;

7       (9)     For penalties, as authorized by statute;

8       (10)    For prejudgment and postjudgment interest;

9       (11)    For injunctive relief;

10      (12)    For such other and further relief as the Court deems just and proper.

11

12      Plaintiff RICHARD MARTIN, as Private Attorney General for all employees similarly

13 aggrieved accordingly prays for the following relief against BALL CORPORATION, an Indiana

14 Corporation; BALL METAL BEVERAGE CONTAINER CORP., a Colorado Corporation;

15 FRANK BRAGER; and DOES 1 through 20, inclusive, as follows:

16      (13)    For penalties, as authorized by statute;

17      (14)    For prejudgment and postjudgment interest;

18      (15)    For reinstatement;

19      (16)    For restitution;

20      (17)    For injunctive relief;

21      (18)    For declaratory relief;

22      (19)    For all attorneys' fees incurred;

23      (20)    For all costs of suit;

24      (21)    For such other and further relief as the Court deems just and proper.

25

26

27

28

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1   Dated: July 12, 2021                              **LESCHES LAW**

2

3                                                     /s/ Levi Lesches

4                                                     Attorneys for Plaintiff RICHARD MARTIN, an
5                                                     individual, and on behalf of all other similarly
                                                      situated, and as a Private Attorney General on Behalf
6                                                     of all Employees Similarly Aggrieved

7   Dated: July 12, 2021                              **BLADY WORKFORCE LAW GROUP APC**

8

9                                                     /s/ Benjamin Blady
                                                      I. Benjamin J. Blady
10

11                                                    Attorneys for Plaintiff RICHARD MARTIN, an
                                                      individual, and on behalf of all other similarly
12                                                    situated, and as a Private Attorney General on Behalf
                                                      of all Employees Similarly Aggrieved
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FIRST AMENDED CLASS COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

— JURY DEMAND —

Plaintiff, individually and on behalf of all similarly situated, hereby demands a jury trial with respect to all issues triable by jury.

Dated: July 12, 2021                              **LESCHES LAW**


                                                  ___/s/ Levi Lesches_____

                                                  Attorneys for Plaintiff RICHARD MARTIN, an
                                                  individual, and on behalf of all other similarly
                                                  situated, and as a Private Attorney General on Behalf
                                                  of all Employees Similarly Aggrieved

Dated: July 12, 2021                              **BLADY WORKFORCE LAW GROUP APC**


                                                  ___/s/ Benjamin Blady_____
                                                  I. Benjamin J. Blady


                                                  Attorneys for Plaintiff RICHARD MARTIN, an
                                                  individual, and on behalf of all other similarly
                                                  situated, and as a Private Attorney General on Behalf
                                                  of all Employees Similarly Aggrieved