1   **LESCHES LAW**
    LEVI LESCHES — Cal. Bar No. 305173
2   5757 Wilshire Boulevard, Suite 535
    Los Angeles, CA 90036
3   Phone: (323) 900-0580
    Email: levi@lescheslaw.com
4

5

6   ATTORNEYS FOR
    Plaintiff Richard MARTIN
7

8

9               **UNITED STATES DISTRICT COURT**

10          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

11

12  RICHARD MARTIN, an individual,          Case No: 2:21-cv-01049-DAD-CKD
                                            Dist. Judge Hon. Dale A. Drozd
13              Plaintiff,
                                            **SECOND AMENDED COMPLAINT FOR**
14  v.                                      **DAMAGES**

15
    BALL CORPORATION, an Indiana            **(1)   DISABILITY DISCRIMINATION**
16  Corporation; BALL METAL BEVERAGE              **(FEHA)**
    CONTAINER CORP., a Colorado             **(2)   DISABILITY RETALIATION**
17  Corporation; and DOES 1 through 20,           **(FEHA)**
    inclusive.                              **(3)   FAILURE TO ENGAGE IN A**
18                                                **TIMELY GOOD–FAITH**
                                                  **INTERACTIVE PROCESS (FEHA)**
19              Defendant.                  **(4)   CFRA RETALIATION**
                                            **(5)   FMLA RETALIATION**
20                                          **(6)   SICK-LEAVE**
                                                  **RETALIATION/UNLAWFUL**
21                                                **POLICY (***LAB. CODE* § 246 *ET SEQ.***)**
                                            **(7)   *TAMENY***
22                                          **(8)   UCL — § 17200**
23

24
                                            **JURY TRIAL DEMANDED ON ALL**
25                                          **COUNTS**

26

27

28
    ───────────────────────────────────────────────────────
                SECOND AMENDED COMPLAINT FOR DAMAGES
                        JURY TRIAL DEMANDED

1

2  **Plaintiff Richard Martin, demanding a jury trial on all counts, alleges:**

3  <u>**JURISDICTION & VENUE**</u>

4      2.      **Plaintiff Richard Martin**, at the time of the filing of this action, was a resident,

5  domiciliary, and citizen of California, with his primary place of residence in Solano County.

6      3.      **Defendant BALL Corporation** is a corporation organized under the laws of the

7  State of Indiana, with its principal place of business identified in state filings as 9200 W. 108th

8  Circle Westminster, Colorado 80021.

9      4.      **Defendant BALL Metal Beverage Container Corporation** is a corporation

10  organized under the laws of the State of Colorado, with its principal place of business identified in

11  state filings as 9200 W. 108th Circle Westminster, Colorado 80021.

12      5.      **Defendant BALL Corporation & Defendant BALL Metal Beverage Container**

13  **Corporation** are referred to collectively as "**Defendants BALL**."

14      6.      The BALL Defendants operate an industrial plant in Solano County, at 2400

15  Huntington Dr, Fairfield, CA 94533.

16      7.      Plaintiff has, within the time prescribed by law, obtained a "right-to-sue" letter from

17  the California Department of Fair Employment and Housing; a copy of which letter is attached

18  hereto as Exhibit "A".

19      8.      Plaintiff does not know the true names of Defendants Does 1 through 20, inclusive,

20  and therefore sues them by those fictitious names.  Plaintiff is informed and believes, and on the

21  basis of that information and belief, herein alleges, that each of those Defendants was in some

22  manner legally responsible for the events and happenings alleged in this Complaint and for

23  Plaintiff's damages.  The names, capacities, and relationships of Does 1 through 20, will be alleged

24  by amendment to this Complaint when they are known.

25      9.      Plaintiff is informed and believes, and based thereon alleges, that at all times men-

26  tioned herein, Defendant Does 1 through 20, inclusive, and each of them, were the agents and/or

27  employees of each of the remaining Defendants, and each of them, in doing the acts alleged in this

28

SECOND AMENDED COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

Complaint, were acting within the purpose and scope of said agency and employment.

10.    Each Defendant is sued individually and as an agent, conspirator, aider and abettor, investor, manager, unit-holder, employee and/or control-person for each of the other Defendants, and the liability of each Defendant arises from the fact that each has engaged in all or part of the unlawful acts, plans, schemes, or wrongs complained of herein and was acting within the course and scope of said agency, partnership, conspiracy, and employment.

11.    Plaintiff does not know the entity that employed him, and sued the Ball Defendants under subdivision (c) of section 379 of the *Code of Civil Procedure*, which provides that "[w]here the plaintiff is in doubt as to the person from whom he or she is entitled to redress, he or she may join two or more defendants, with the intent that the question as to which, if any, of the defendants is liable, and to what extent, may be determined between the parties."

## **GENERAL ALLEGATIONS**

12.    Plaintiff MARTIN was employed by Defendants BALL as a machinist in BALL's Fairfield Plant, which manufactures cans of the type used to package canned soup, vegetables, and similar products.

13.    On November 6, 2018, MARTIN was injured at work while lowering a hopper of manufactured cans.

14.    MARTIN reported that he was injured to a supervisor; the supervisor gave MARTIN ibuprofen and sent him back to work.

15.    Every day for the following four days, MARTIN reported to his supervisors that he was injured; yet, each day, MARTIN was sent back to work.

16.    Finally, MARTIN advised Defendants BALL that unless he was provided medical assistance he would leave work and work it out himself.

17.    Only AFTER MARTIN made this ultimatum, MARTIN'S supervisors sent him to meet with a Human Resources representative who took MARTIN to a hospital where he was diagnosed with a pulled muscle behind his rotator cuff.

1    18.    The hospital gave MARTIN a shot, muscle relaxants, and pain medications, and set

2    him up with an appointment with a Workers Compensation doctor.

3    19.    The doctor told MARTIN he could return to work on light duty.    His work

4    restrictions included no heavy lifting or pulling.

5    20.    Defendants BALL switched MARTIN to a light-duty position, but in this position,

6    he was not given any overtime work.

7    21.    MARTIN had accumulated over 400 hours of overtime in the preceding months, and

8    MARTIN was retaliated against by being denied overtime.

9    22.    MARTIN was also required to change from his previous night shift to a day shift,

10    without being provided any reasonable accommodation in the form of being provided time to seek

11    and obtain childcare during those different work hours; in violation of Labor Code section 230.8.

12    23.    On November 20, 2018, MARTIN went, to a scheduled doctor's appointment with

13    his Worker's Compensation doctor.

14    24.    MARTIN returned from the doctor's appointment at 11:00 a.m. and advised his

15    supervisor that he was ready to work his regular 6 p.m. to 6 a.m. shift.  The supervisor advised

16    Martin that he would not be allowed to work at 6:00 p.m., because the company required at least 8

17    hours between shifts.

18    25.    On information and belief, this representation was fraudulent and intended to set

19    MARTIN up for termination.

20    26.    The supervisor advised MARTIN that, due to the fact that he had gone to a Worker's

21    Compensation on company time, he would not be allowed to begin his shift until 8 p.m., and he

22    would be docked one "point", pursuant to the company's policy of: Docking one point for missing

23    the first hour in a shift; and docking two points for time missed in excess of 1.1 hours.

24    27.    MARTIN had offered to come at 8 p.m. until 8 a.m. to avoid being docked any

25    points.  That offer was refused.  MARTIN was advised that, no matter what, he would be docked

26    one point because his Worker's Compensation doctor's visit would delay his next shift.

27    28.    MARTIN had been advised that EXCEEDING 10 points was grounds for

28

SECOND AMENDED COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1  termination. At the time, Martin had eight points.

2     29.    Because November 28, 2018 was MARTIN'S work anniversary, and would reset the

3  "points" to zero, MARTIN asked whether taking off the entire shift---which would result in two

4  points---would be grounds for termination.

5     30.    MARTIN'S supervisor consulted with the workplace policy manual, in front of

6  Martin, and then assured Martin that only EXCEEDING 10 points---i.e. accruing eleven points---

7  was grounds for termination. Relying on this assurance, MARTIN took the remainder of his shift

8  off.

9     31.    On information and belief, this representation was fraudulent and intended to set

10  MARTIN up for termination.

11     32.    MARTIN returned to work the next shift, and worked the remainder of the work

12  week, November 21 through November 23, without incident.

13     33.    On November 27, 2018, MARTIN returned to work, and he was called into the office

14  by his production manager, Brager, and a Human Resources Representative.

15     34.    Brager and the Human Resources Representative informed Martin that he was being

16  suspended without pay, pending an investigation.

17     35.    MARTIN was not informed what matter was being investigated. Since Mr.

18  MARTIN had been working for Defendants BALL for exactly one year at this point, he was due

19  for a $1.00 per hour pay raise.

20     36.    Additionally, MARTIN had accumulated over 400 hours of overtime, which entitled

21  Martin to a significant bonus, in the thousands of dollars, which should have been paid to MARTIN

22  in the following February.

23     37.    Defendants BALL suspended and terminated MARTIN to avoid giving him his pay

24  raise and to avoid paying his bonus.  Defendants BALL took retaliatory action against MARTIN

25  due to his engaging in protected activity by seeking disability accommodations.

26     38.    Alternatively, Defendants BALL suspended and terminated MARTIN because,

27  knowing that he had been injured, and that, on his work anniversary, his FMLA/CFRA rights would

28

1   accrue, Defendants BALL suspended and terminated MARTIN so as to avoid FMLA/CFRA

2   obligations.

3        39.    On December 8, 2018, Brager called MARTIN and informed him that he was being

4   terminated because of his attendance points. Clearly, MARTIN was terminated in retaliation for

5   having sought an accommodation for a temporary disability.

6        40.    As a result, Martin's termination was wrongful in violation of California's Public

7   Policy.

8

9                      **FIRST CAUSE OF ACTION**

10                    **Disability Discrimination (FEHA)**

11           **By Plaintiff MARTIN against Defendants BALL**

12              **and Does 1 through 20, Inclusive**

13        41.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

14        42.    Defendants BALL, and Does 1 through 20, inclusive, employed more than 5

15   employees within California.

16        43.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

17   inclusive.

18        44.    Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN

19   had a torn rotator cuff,  constituting a musculoskeletal physical disability and/or other disability

20   under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities

21   of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . .

22   musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

23        45.    Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN

24   as having a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d),

25   and which limited, amongst other limitations, the major life activities of "performing manual tasks,"

26   "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R.

27   § 11065(l).

28

46.    Plaintiff MARTIN was able to perform all essential job duties, either with reasonable accommodations, such as "job restructuring," "modified work schedule," "unpaid leave," and/or other reasonable accommodations, 2 C.C.R. § 11065(p); *id*.. § 11068(c); and/or Plaintiff MARTIN was able to perform all essential job duties without reasonable accommodation.

47.    Defendants BALL, and Does 1 through 20, inclusive, discharged Plaintiff and/or subjected Plaintiff to adverse employment action and/or refused to provide Plaintiff with reasonable accommodations, including, without limitation, refused to provide Plaintiff with the reasonable accommodations of being able to visit a doctor and obtain medical care.

48.    Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1 through 20, inclusive.

49.    The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a substantial factor in causing MARTIN's harm.

50.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount no less than $250,000.

51.    Said conduct by Defendants, and Does 1 through 20, and each of them, was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such sum that shall be determined at the time of trial.

## **SECOND CAUSE OF ACTION**

### **Disability Retaliation (FEHA)**

### **By Plaintiff MARTIN against Defendants BALL**

### **and Does 1 through 20, Inclusive**

52.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph

53.    Defendants BALL, and Does 1 through 20, inclusive, employed more than 5 employees within California.

54.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

SECOND AMENDED COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1    inclusive.

2        55.    Plaintiff MARTIN engaged in the protected activity of requesting disability

3    accommodations, including, without limitation, requesting the disability accommodation of leave

4    from work to obtain medical treatment necessary for treating MARTIN's disability.

5        56.    Plaintiff MARTIN was discharged and/or subjected to an adverse employment

6    action.

7        57.    Plaintiff MARTIN's protected activity in requesting disability accommodations,

8    including, without limitation, requesting the disability accommodation of leave from work to obtain

9    medical treatment necessary for treating MARTIN's disability, were a substantial motivating reason

10    for the decision by Defendants BALL, and Does 1 through 20, inclusive, to discharge Plaintiff

11    MARTIN.

12        58.    Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN

13    had a torn rotator cuff,  constituting a musculoskeletal physical disability and/or other disability

14    under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities

15    of "performing  manual  tasks," "reaching," "lifting," "bending," and the "operation of . . .

16    musculoskeletal . . . functions."  2 C.C.R. § 11065(l).

17        59.    Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN

18    as having a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d),

19    and which limited, amongst other limitations, the major life activities of "performing manual tasks,"

20    "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions."  2 C.C.R.

21    § 11065(l).

22        60.    Plaintiff MARTIN was discharged and/or subjected to an adverse employment

23    action because he was disabled and/or because Defendants BALL, and Does 1 through 20,

24    inclusive, perceived Plaintiff MARTIN as being disabled.

25        61.    Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1

26    through 20, inclusive.

27        62.    The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a

28

1    substantial factor in causing MARTIN's harm.

2         63.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount

3    no less than $250,000.

4         64.    Said conduct by Defendants, and Does 1 through 20, and each of them, was

5    intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's

6    rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that

7    renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such

8    sum that shall be determined at the time of trial.

9                              **THIRD CAUSE OF ACTION**

10              **Failure to Engage in Timely Good-Faith Interactive Process (FEHA)**

11                   **By Plaintiff MARTIN against Defendants BALL**

12                        **and Does 1 through 20, Inclusive**

13        65.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

14        66.    Defendants BALL, and Does 1 through 20, inclusive, employed more than 5

15   employees within California.

16        67.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

17   inclusive.

18        68.    Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN

19   had a torn rotator cuff,  constituting a musculoskeletal physical disability and/or other disability

20   under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities

21   of "performing  manual tasks," "reaching," "lifting," "bending," and the "operation of . . .

22   musculoskeletal . . . functions."  2 C.C.R. § 11065(l).

23        69.    Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN

24   as having a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d),

25   and which limited, amongst other limitations, the major life activities of "performing manual tasks,"

26   "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions."  2 C.C.R.

27   § 11065(l).

28

SECOND AMENDED COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

70.     Plaintiff MARTIN was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that he would be able to perform the essential job requirements.

71.     Defendants BALL, and Does 1 through 20, inclusive, failed to participate in a timely good-faith interactive process with Plaintiff MARTIN to determine whether reasonable accommodation could be made.

72.     Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1 through 20, inclusive.

73.     The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a substantial factor in causing MARTIN's harm.

74.     Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount no less than $250,000.

75.     Said conduct by Defendants, and Does 1 through 20, and each of them, was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such sum that shall be determined at the time of trial.

**FOURTH & FIFTH CAUSE OF ACTION**

**CFRA/FMLA Retaliation**

**By Plaintiff MARTIN against Defendants BALL**

**and Does 1 through 20, Inclusive**

76.     Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

77.     Defendants BALL, and Does 1 through 20, inclusive, employed more than 50 employees within California.

78.     Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20, inclusive.

79.     On no later than November 28, 2018, Plaintiff MARTIN became eligible to no less

than 12 weeks job-protected leave.

80.    Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN had a torn rotator cuff,  constituting a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

81.    Defendants BALL, and Does 1 through 20, believed that Plaintiff MARTIN, being injured, would potentially seek to take CFRA leave, and, for such reason, Defendants BALL, and Does 1 through 20, terminated Plaintiff MARTIN without providing him reasonable accommodations and/or without providing him a reasonable opportunity to challenge his termination and/or through misrepresenting its point policy, so as to preclude MARTIN's ability to take protected leave.

82.    The belief by Defendants BALL, and Does 1 through 20, that Plaintiff MARTIN was likely to seek CFRA leave was a substantial motivating reason for Plaintiff MARTIN being discharged and/or subjected to an adverse employment action.

83.    Plaintiff MARTIN, in fact, made a request for FMLA leave, only to be told he was not eligible; and, thereafter, Plaintiff MARTIN was fired before he could claim eligibility.

84.    Additionally, Plaintiff MARTIN is aware of another employee that was fired on her one-year work anniversary.  Plaintiff MARTIN is informed and believed, and thereon alleges, that Defendants BALL, and Does 1 through 20, inclusive, perceived that other employee as likely to seek CFRA/FMLA rights.

85.    Plaintiff MARTIN was discharged and/or subjected to an adverse employment action because he was disabled and/or because Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN as being disabled.

86.    Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1 through 20, inclusive.

87.    The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a

1    substantial factor in causing MARTIN's harm.

2    88.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount

3    no less than $250,000.

4    89.    Said conduct by Defendants, and Does 1 through 20, and each of them, was

5    intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's

6    rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that

7    renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such

8    sum that shall be determined at the time of trial.

9    **SIXTH CAUSE OF ACTION**

10    **Violation of Healthy Workplaces, Healthy Families Act of 2014 (HWHFA)**

11    **By Plaintiff MARTIN against Defendants BALL**

12    **and Does 1 through 20, Inclusive**

13    90.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

14    91.    Defendants BALL, and Does 1 through 20, inclusive, employed Plaintiff MARTIN

15    within California.

16    92.    Defendants BALL, and Does 1 through 20, inclusive, employed MARTIN without

17    any applicable Collective Bargaining Agreement as a machinist in Defendants BALL's Fairfield

18    food-can manufacturing facility, and, accordingly, Defendants BALL, and Does 1 through 20,

19    inclusive, were not exempt under section 245.5 of the *Labor Code*.

20    93.    Defendants BALL implemented an unlawful Sick Leave policy that failed to satisfy

21    the minimum requirements of California's HWHFA.  (*Lab. Code*, § 246(e).)

22    94.    Defendants BALL, and Does 1 through 20, inclusive, employed MARTIN, and

23    similarly-situated employees, in 12-hour shifts.

24    95.    Under the sick-leave policy ("The Unlawful Absence Policy") of Defendants BALL,

25    and Does 1 through 20, inclusive, employees were not allowed to take incremental sick leave

26    absences.  Rather, employees were required to take paid sick leave in unlawfully rigid "blocks" of

27    paid sick time.

28

SECOND AMENDED COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

96.     Plaintiff is informed and believed that absences of 1 minute to 60 minutes were counted as one point; and absences of 61 minutes to 720 minutes were counted as two points.

97.     Accruing eleven points within a 12-month period constituted grounds for termination under The Unlawful Absence Policy.

98.     Under The Unlawful Absence Policy, points reset to zero annually on the employee's hire-date anniversary.

99.     Under The Unlawful Absence Policy, an employee needing less than eight hours leave for personal sickness and/or family sickness had no option to use two-hour increments of paid leave.  Rather, an employee needing, for instance, three hours leave for personal sickness and/or family sickness would be deemed to have been absent for the entire shift.

100.    Under The Unlawful Absence Policy, an employee could not carry sick days over to the following year.  Under The Unlawful Absence Policy, allowable sick time was capped.

101.    Accordingly, Defendants BALL, and Does 1 through 20, inclusive, were legally required to provide no less than "24 hours or three days in each year of employment."  (*Lab. Code*, § 246(d); *id*, § 246(b)(4).)

102.    Accordingly, Defendants BALL, and Does 1 through 20, inclusive, were legally required to provide employees with the option of taking sick leaves in increments of no more than 2 hours minimum.

103.    The Unlawful Absence Policy apparently interprets subdivision (b)(4)/(d)'s provision for three-day leave as a safeharbor; *i.e.*, the Unlawful Absence Policy apparently views compliance with subdivision (k)'s provision, which requires employers to authorize leave in increments no greater than 2 hours, as satisfied if three full days have been provided as paid sick leave.

104.    The apparent construction given by Defendants to the HWHFA is absurd on its face, because if subdivisions (b)(4) & (d) indeed constituted a safeharbor to subdivision (k), then it would necessarily follow that subdivision (k) only protects employees working shifts **of at least thirteen hours**.  For employees working shifts of less than thirteen hours, there would be no need for a two-

1    hour maximum on increment usage, because, even with a four-hour usage increment, the employee

2    would still have sufficient time to spread over three days.

3        105.    Because it is an absurdity to suppose that subdivision (k) is a protection limited to

4    workers doing doubletime shifts, it necessarily follows that an employer's policy furnishing 3 days

5    paid leave does not, itself, constitute adequate compliance with the HWHFA.

6        106.    Rather, a HWHFA-compliant policy must furnish 24 paid hours, spreadable over *as*

7    *many as twelve days* (*i.e.*, if the employer imposes a two-hour usage increment); except that if the

8    employee's shift is less than eight hours, the employer does not need to give more than three full

9    days of sick HWHFA time.

10        107.    Defendants BALL, and Does 1 through 20, inclusive, terminated Plaintiff based on

11    the pretextual basis that Plaintiff had, supposedly, accumulated 10 "points" in a year period, in

12    addition to the 3 HWHFA days taken by Plaintiff in that period.

13        108.    However, Plaintiff had been denied the option of taking HWHFA leave in

14    increments of less than 12 hours.

15        109.    If Plaintiff had been offered the option of taking HWHFA leave in increments of

16    less than 12 hours, Plaintiff would not have used all his HWHFA time within the twelve-month

17    period.

18        110.    Accordingly, Plaintiff was unlawfully terminated due to Defendants BALL, and

19    Does 1 through 20, inclusive, and all of them, refusing to allow Plaintiff to utilize statutory HWHFA

20    leave in increments of two-hours or less.

21        111.    Plaintiff's termination was, therefore, a "per se" violation of the HWHFA.  (*Lab.*

22    *Code* § 234.)

23        112.    Accordingly, Plaintiff is entitled to bring suit for reinstatement and actual damages.

24    (*Lab. Code* § 233(e); *id.*, § 248.5(e).)

25        113.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount

26    no less than $250,000.

27

28

1

**SEVENTH CAUSE OF ACTION**

2

***TAMENY***

3

**By Plaintiff MARTIN against Defendants BALL**

4

**and Does 1 through 20, Inclusive**

5    114.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph

6    115.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

7    inclusive.

8    116.    On no later than November 28, 2018, Plaintiff MARTIN became eligible to no less

9    than 12 weeks job-protected leave.

10    117.    Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN

11    had a torn rotator cuff,  constituting a musculoskeletal physical disability and/or other disability

12    under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities

13    of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . .

14    musculoskeletal . . . functions."  2 C.C.R. § 11065(l).

15    118.    Defendants BALL, and Does 1 through 20, believed that Plaintiff MARTIN, being

16    injured, would potentially seek to take CFRA leave, and, for such reason, Defendants BALL, and

17    Does 1 through 20, terminated Plaintiff MARTIN without providing him reasonable

18    accommodations and/or without providing him a reasonable opportunity to challenge his

19    termination and/or through misrepresenting its point policy, so as to preclude MARTIN's ability to

20    take protected leave.

21    119.    The belief by Defendants BALL, and Does 1 through 20, that Plaintiff MARTIN

22    was likely to seek CFRA leave was a substantial motivating reason for Plaintiff MARTIN being

23    discharged and/or subjected to an adverse employment action.

24    120.    Plaintiff MARTIN was discharged and/or subjected to an adverse employment

25    action because he was disabled and/or because Defendants BALL, and Does 1 through 20,

26    inclusive, perceived Plaintiff MARTIN as being disabled.

27    121.    Additionally, Defendants BALL, and Does 1 through 20, inclusive, terminated

28

1   Plaintiff based on the pretextual basis that Plaintiff had, supposedly, accumulated 10 "points" in a

2   year period, in addition to the 3 HWHFA days taken by Plaintiff in that period.

3       122.    However, Plaintiff had been denied the option of taking HWHFA leave in

4   increments of less than 12 hours.

5       123.    If Plaintiff had been offered the option of taking HWHFA leave in increments of

6   less than 12 hours, Plaintiff would not have used all his HWHFA time within the twelve-month

7   period.

8       124.    Accordingly, Plaintiff was unlawfully terminated due to Defendants BALL, and

9   Does 1 through 20, inclusive, and all of them, refusing to allow Plaintiff to utilize statutory HWHFA

10  leave in increments of two-hours or less.

11      125.    Plaintiff's termination was, therefore, a "per se" violation of the HWHFA.  (*Lab.*

12  *Code* § 234.)

13      126.    Plaintiff's termination was a violation of public policy in that Plaintiff's termination

14  violated the public policy of California's sick-time laws, through denying Plaintiff sick time and

15  then terminating Plaintiff on that basis; in that Plaintiff's termination was motivated by an intent to

16  deprive Plaintiff's CFRA rights from vesting and accruing; in that Plaintiff's termination was

17  motivated by an intent to discriminate against Plaintiff due to Plaintiff being disabled and/or being

18  perceived as disabled; in that Plaintiff's termination was motivated by an intent to avoid

19  accommodating Plaintiff's disability; in that Defendants, terminated Plaintiff due to the injury

20  incurred in the Defendants' service, thereby violating fundamental public policy as articulated in

21  *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 661.

22      127.    Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1

23  through 20, inclusive.

24      128.    The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a

25  substantial factor in causing MARTIN's harm.

26      129.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount

27  no less than $250,000.

28

1    130.    Said conduct by Defendants, and Does 1 through 20, and each of them, was
2    intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's
3    rights.  The described conduct was done with malice, oppression, and/or fraud, in a manner that
4    renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such
5    sum that shall be determined at the time of trial.

6

7                                    **EIGHTH CAUSE OF ACTION**
8                                    ***Bus. & Prof. §§ 17200 et seq.***
9                                    **By Plaintiff MARTIN**
10                       **against Defendants BALL and Does 1 through 20, Inclusive**

11    131.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

12    132.    Defendants BALL, and Does 1 through 20, and each of them, have engaged and
13    continue to engage in unfair and/or unlawful business practices in California in violation of
14    *California Business and Professions Code* § 17200 *et seq.,* in committing the various wrongdoings,
15    torts, statutory violations, and unlawful, unfair, and fraudulent business practices herein.

16    133.    On information and belief, Defendants BALL, and Does 1 through 20, and each of
17    them, have engaged and continue to engage in unfair and/or unlawful business practices by failing
18    to provide adequate FEHA training and by failing to provide reasonable oversight against unlawful
19    practices within the various Defendants' organizations.

20    134.    Defendants BALL, and Does 1 through 20, and each of their, utilization of these
21    unfair and/or unlawful business practices constitutes unfair and/or unlawful competition as such
22    practices have procured Defendants, and Does 1 through 20, and each of them, an unfair advantage
23    over Defendants'  competitors who have been and/or are currently employing workers and
24    attempting to do so in honest compliance with applicable laws.

25    135.    Defendants BALL utilization of these unfair and/or unlawful business practices
26    constitutes a public nuisance.

27    136.    Plaintiff is a victim of Defendant's unfair and/or unlawful conduct alleged herein,

28

SECOND AMENDED COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1  and Plaintiff seeks full restitution of monies, as necessary and according to proof, to restore any

2  and all monies withheld, acquired and/or converted by Defendants BALL pursuant to *Business and*

3  *Professions Code* §§ 17203 and 17208. 96.

4      137.    Defendants BALL was compelled to retain the services of counsel to file this court

5  action to protect his interests and those of the public, to obtain injunctive relief on behalf of the

6  public, and to enforce important rights affecting the public interest.  Plaintiff has thereby incurred

7  the financial burden of attorneys' fees and costs, which he is entitled to recover under section 1021.5

8  of the *Code of Civil Procedure*.

9                        **PRAYER FOR RELIEF**

10      Plaintiff RICHARD MARTIN, individually, and on behalf of all other similarly situated,

11  accordingly prays for the following relief against BALL CORPORATION, an Indiana Corporation;

12  BALL METAL BEVERAGE CONTAINER CORP., a Colorado Corporation; and DOES 1 through

13  20, inclusive, as follows:

14      (1)    For compensatory damages, including back pay, front pay, and/or future earnings,

15              in an amount no less than $250,000;

16      (2)    For all special and consequential damages;

17      (3)    For reinstatement;

18      (4)    For restitution;

19      (5)    For punitive damages,

20      (6)    For all attorneys' fees incurred;

21      (7)    For all costs of suit;

22      (8)    For penalties, as authorized by statute;

23      (9)    For prejudgment and postjudgment interest;

24      (10)    For injunctive relief;

25      (11)    For such other and further relief as the Court deems just and proper.

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1 | Dated: June 4, 2024                    **LESCHES LAW**

2

3                                        _/s/ Levi Lesches_____

4                                    Attorneys for Plaintiff RICHARD MARTIN

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

1

**— JURY DEMAND —**

2 Plaintiff hereby demands a jury trial with respect to all issues triable by jury.

3

Dated: June 4, 2024                    **LESCHES LAW**

4

5

6                                        ___/s/ Levi Lesches_____

7                                        Attorneys for Plaintiff RICHARD MARTIN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SECOND AMENDED COMPLAINT FOR DAMAGES
JURY TRIAL DEMANDED

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

# DEPARTMENT OF FAIR EMPLOYMENT & HOUSING

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

November 22, 2019

Levi Lesches
5757 Wilshire Blvd., Ste. 535
Los Angeles, California 90036

RE:     **Notice to Complainant's Attorney**
        DFEH Matter Number: 201911-08368022
        Right to Sue: Martin / Ball Corporation et al.

Dear Levi Lesches:

Attached is a copy of your complaint of discrimination filed with the Department of Fair Employment and Housing (DFEH) pursuant to the California Fair Employment and Housing Act, Government Code section 12900 et seq. Also attached is a copy of your Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these documents on the employer.** You must serve the complaint separately, to all named respondents. Please refer to the attached Notice of Case Closure and Right to Sue for information regarding filing a private lawsuit in the State of California. A courtesy "Notice of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it meets procedural or statutory requirements.

Sincerely,

Department of Fair Employment and Housing

**MARTIN - 26A1DISC -0199**

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

November 22, 2019

RE:    **Notice of Filing of Discrimination Complaint**
       DFEH Matter Number: 201911-08368022
       Right to Sue: Martin / Ball Corporation et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit.
This case is not being investigated by DFEH and is being closed immediately. A copy of
the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,


Department of Fair Employment and Housing

**MARTIN - 26A1DISC -0200**

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

November 22, 2019

Richard Martin
2068 Winston Dr
Fairfield, California 94534

RE:    **Notice of Case Closure and Right to Sue**
       DFEH Matter Number: 201911-08368022
       Right to Sue: Martin / Ball Corporation et al.

Dear Richard Martin,

This letter informs you that the above-referenced complaint was filed with the
Department of Fair Employment and Housing (DFEH) has been closed effective
November 22, 2019 because an immediate Right to Sue notice was requested. DFEH
will take no further action on the complaint.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment
Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this
DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act,
whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**MARTIN - 26A1DISC -0201**

**COMPLAINT OF EMPLOYMENT DISCRIMINATION**
**BEFORE THE STATE OF CALIFORNIA**
**DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING**
**Under the California Fair Employment and Housing Act**
**(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Richard Martin                                    DFEH No. 201911-08368022

                        Complainant,

vs.

Ball Corporation
10 LONGS PEAK DR
BROOMFIELD, Colorado 80021

Ball Aerospace & Technologies Corp.
10 LONGS PEAK DR
BROOMFIELD, Colorado 80021

Roger Seal
,

Claude Vaughan
,

Frank Bragger
,

                        Respondents

_____

1. Respondent **Ball Corporation**  is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant **Richard Martin**, resides in the City of **Fairfield** State of **California.**

3. Complainant alleges that on or about **December 8, 2018**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical or mental), other and as a result of the discrimination was terminated, laid off, denied hire or promotion, suspended, demoted, denied any employment benefit

-1-
*Complaint – DFEH No. 201911-08368022*

Date Filed: November 22, 2019

MARTIN - 26A1DISC -0202

or privilege, denied family care or medical leave (cfra) (employers of 50 or more people), denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was terminated, laid off, denied hire or promotion, suspended, demoted, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied family care or medical leave (cfra) (employers of 50 or more people), other, denied or forced to transfer.

**Additional Complaint Details:** On November 6, 2018, Complainant Martin was injured at work while lowering a hopper of manufactured cans. He reported that he was injured, and his supervisor Respondent Claude Vaughan gave him ibuprofen and sent him back to work. Initially, Respondent Claude Vaughan instructed Richard to use the time to complete some online training, which Complainant Martin did for half a day.  Once he completed his training, however, Mr. Martin was ordered back to work.

Every day for the following four days, Martin reported to his supervisors that he was injured, yet each day he was sent back to work.  Finally, Martin advised Respondent Vaughan that unless he was provided medical assistance he would leave work and work it out himself.  Only AFTER Martin made this ultimatum,  Martin's supervisors sent him to meet with a Human Resources representative named Myra Rivera who took Martin to a hospital where he was diagnosed with a pulled muscle behind his rotator cuff.

The hospital gave Martin a shot, muscle relaxants, and pain medications, and set him up with an appointment with a Workers Compensation doctor.  The doctor told Martin he could return to work on light duty. His work restrictions included no heavy lifting or pulling. Respondent switched Mr. Martin to a light-duty position, but in this position, he was not given any overtime work.  Mr. Martin had accumulated over 400 hours of overtime in the preceding months, and Martin was retaliated against by being denied overtime.  Martin was also required to change from his previous night shift to a day shift, without being provided any reasonable accommodation in the form of being provided time to seek and obtain childcare during those different work hours; in violation of Labor Code section 230.8.

On November 20, 2018, Martin went, to a scheduled doctor's appointment with his Worker's Compensation doctor.  Martin returned from the doctor's appointment at 11:00 a.m., and advised his supervisor that he was ready to work his regular 6 p.m. to 6 a.m. shift.  The supervisor advised Martin that he would not be allowed to work

Date Filed: November 22, 2019

MARTIN - 26A1DISC -0203

at 6:00 p.m., because the company required at least 8 hours between shifts.  On information and belief, this representation was fraudulent and intended to set Martin up for termination.  The supervisor advised Martin that, due to the fact that he had gone to a Worker's Compensation on company time, he would not be allowed to begin his shift until 8 p.m., and he would be docked one "point", pursuant to the company's policy of: Docking one point for missing the first hour in a shift, and docking two points for missing between 1.1 hours to the complete shift.

Martin offered to come at 8 p.m. until 8 a.m. to avoid being docked any points.  That offer was refused.  Martin was advised that, no matter what, he would be docked one point because his Worker's Compensation doctor's visit would delay his next shift.

Martin had been advised that EXCEEDING 10 points was grounds for termination.  At the time, Martin had eight points.  Six of those eight points had been accrued for sick days, and the docking of points for minimally required sick days constituted a retaliatory practice in violation of the Healthy Workplaces, Healthy Families Act of 2014.

Because November 28, 2018 was Martin's work anniversary, and would reset the "points" to zero, Martin asked whether taking off the entire shift---which would result in two points---would be grounds for termination.  Martin's supervisor consulted with the workplace policy manual, in front of Martin, and then assured Martin that only EXCEEDING 10 points---i.e. accruing eleven points---was grounds for termination.  Relying on this assurance, Martin took the remainder of his shift off.

Martin returned to work the next shift, and worked the remainder of the work week, November 21 through November 23, without incident.  On information and belief, this representation was fraudulent and intended to set Martin up for termination.

On November 27, 2018, Martin returned to work, and he was called into the office by his production manager, Respondent Bragger, and Ms. Myra Rivera. Respondent Bragger and Ms. Rivera informed Martin that he was being suspended without pay, pending an investigation. Martin was not informed what matter was being investigated. Since Mr. Martin had been working for Respondent for exactly one year at this point, he was due for a $1.00 per hour pay raise. Additionally, Martin had accumulated over 400 hours of overtime, which entitled Martin to a significant bonus, in the thousands of dollars, which should have been paid to Complainant in the following February.
Respondent suspended Martin to avoid giving him his pay raise and to avoid paying his bonus.  Respondents took retaliatory action against Martin due to his engaging in protected activity and seeking Worker's Compensation medical care.

-3-
*Complaint – DFEH No. 201911-08368022*

Date Filed: November 22, 2019

**MARTIN - 26A1DISC -0204**

1
2

On information and belief, Respondents suspended Martin on the day prior to his work anniversary in order to prevent Martin from exercising his FMLA and CFRA rights.

3
4
5
6

On December 8, 2018, Respondent Bragger called Martin and informed him that he was being terminated because of his attendance points. Clearly, Martin was terminated in retaliation for having filed a worker's compensation claim. Retaliation for filing a worker's compensation claim, which is a protected activity, is a violation of Labor Code § 132(a). As a result, Martin's termination was wrongful in violation of California's Public Policy.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-4-

*Complaint – DFEH No. 201911-08368022*

Date Filed: November 22, 2019

1  VERIFICATION

2  I, **Levi Lesches**, am the **Attorney** in the above-entitled complaint.  I have read the
3  foregoing complaint and know the contents thereof.  The matters alleged are based
   on information and belief, which I believe to be true.
4
   On November 22, 2019, I declare under penalty of perjury under the laws of the State
5  of California that the foregoing is true and correct.

6                                                                        **Los Angeles, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                              -5-
27                              *Complaint – DFEH No. 201911-08368022*

28  Date Filed: November 22, 2019

**MARTIN - 26A1DISC -0206**

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**

KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 l Elk Grove l CA l 95758
(800) 884-1684 (Voice) l (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov l Email: contact.center@dfeh.ca.gov

November 23, 2020

Levi Lesches
5757 Wilshire Blvd., Ste. 535
Los Angeles, California 90036

RE:    **Notice to Complainant's Attorney**
       DFEH Matter Number: 201911-08368022
       Right to Sue:  / Ball Corporation

Dear Levi Lesches:

Attached is a copy of your **amended** complaint of discrimination filed with the
Department of Fair Employment and Housing (DFEH) pursuant to the California Fair
Employment and Housing Act, Government Code section 12900 et seq.

Pursuant to Government Code section 12962, DFEH will not serve these documents on
the employer.  You or your client must serve the complaint.

The amended complaint is deemed to have the same filing date of the original
complaint.  This is not a new Right to Sue letter.  The original Notice of Case Closure
and Right to Sue issued in this case remains the only such notice provided by the
DFEH.  (Cal. Code Regs., tit. 2, § 10022.)

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Richard Martin                                                      DFEH No. 201911-08368022

Complainant,

vs.

Ball Corporation
10 LONGS PEAK DR
BROOMFIELD, Colorado 80021

Ball Aerospace & Technologies Corp.
10 LONGS PEAK DR
BROOMFIELD, Colorado 80021

Roger Seal
,

Claude Vaughan
,

Frank Bragger
,

BALL METAL BEVERAGE CONTAINER CORP.
9300 W 108TH CIRCLE
WESTMINSTER, Colorado 80021

Respondents

_____

1. Respondent **Ball Corporation**  is an **employer Ball Corporation** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

2. Complainant is naming **Ball Aerospace & Technologies Corp.** as individual Co-Respondent(s).

Complainant is naming **Roger Seal** as individual Co-Respondent(s).

Complainant is naming **Claude Vaughan** as individual Co-Respondent(s).

-1-
*Complaint – DFEH No. 201911-08368022*

Date Filed: November 22, 2019
Date Amended: November 23, 2020

Complainant is naming **Frank Bragger** as individual Co-Respondent(s).

Complainant is naming **BALL METAL BEVERAGE CONTAINER CORP.** as individual Co-Respondent(s).

3. Complainant **Richard Martin**, resides in the City of **Fairfield,** State of **California.**

4. Complainant alleges that on or about **December 8, 2018**, respondent took the following adverse actions:

**Complainant was discriminated against** because of complainant's disability (physical or mental), other and as a result of the discrimination was terminated, laid off, denied hire or promotion, suspended, demoted, denied any employment benefit or privilege, denied family care or medical leave (cfra) (employers of 50 or more people), denied work opportunities or assignments.

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation and as a result was terminated, laid off, denied hire or promotion, suspended, demoted, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied family care or medical leave (cfra) (employers of 50 or more people), other, denied or forced to transfer.

**Additional Complaint Details:** On November 6, 2018, Complainant Martin was injured at work while lowering a hopper of manufactured cans. He reported that he was injured, and his supervisor Respondent Claude Vaughan gave him ibuprofen and sent him back to work. Initially, Respondent Vaughan instructed Richard to use the time to complete some online training, which Complainant Martin did for half a day.  Once he completed his training, however, Mr. Martin was ordered back to work.

Every day for the following four days, Martin reported to his supervisors that he was injured, yet each day he was sent back to work.  Finally, Martin advised Respondent Vaughan that unless he was provided medical assistance he would leave work and work it out himself.  Only AFTER Martin made this ultimatum,  Martin's supervisors sent him to meet with a Human Resources representative named Myra Rivera who took Martin to a hospital where he was diagnosed with a pulled muscle behind his rotator cuff.

The hospital gave Martin a shot, muscle relaxants, and pain medications, and set him up with an appointment with a Workers Compensation doctor.  The doctor told Martin he could return to work on light duty. His work restrictions included no heavy lifting or pulling. Respondent switched Mr. Martin to a light-duty position, but in this position, he was not given any overtime work.  Mr. Martin had accumulated over 400 hours of overtime in the preceding months, and Martin was retaliated against by being denied overtime.  Martin was also required to change from his previous night shift to a day shift, without being provided any reasonable accommodation in the form of being provided time to seek and obtain childcare during those different work hours; in violation of Labor Code section

Date Filed: November 22, 2019
Date Amended: November 23, 2020

230.8.

On November 20, 2018, Martin went, to a scheduled doctor's appointment with his Worker's Compensation doctor.  Martin returned from the doctor's appointment at 11:00 a.m., and advised his supervisor that he was ready to work his regular 6 p.m. to 6 a.m. shift.  The supervisor advised Martin that he would not be allowed to work at 6:00 p.m., because the company required at least 8 hours between shifts.  On information and belief, this representation was fraudulent and intended to set Martin up for termination.  The supervisor advised Martin that, due to the fact that he had gone to a Worker's Compensation on company time, he would not be allowed to begin his shift until 8 p.m., and he would be docked one "point", pursuant to the company's policy of: Docking one point for missing the first hour in a shift, and docking two points for missing between 1.1 hours to the complete shift.

Martin offered to come at 8 p.m. until 8 a.m. to avoid being docked any points.  That offer was refused.  Martin was advised that, no matter what, he would be docked one point because his Worker's Compensation doctor's visit would delay his next shift.

Martin had been advised that EXCEEDING 10 points was grounds for termination.  At the time, Martin had eight points.  Six of those eight points had been accrued for sick days, and the docking of points for minimally required sick days constituted a retaliatory practice in violation of the Healthy Workplaces, Healthy Families Act of 2014.

Because November 28, 2018 was Martin's work anniversary, and would reset the "points" to zero, Martin asked whether taking off the entire shift---which would result in two points---would be grounds for termination.  Martin's supervisor consulted with the workplace policy manual, in front of Martin, and then assured Martin that only EXCEEDING 10 points---i.e. accruing eleven points---was grounds for termination.  Relying on this assurance, Martin took the remainder of his shift off.

Martin returned to work the next shift, and worked the remainder of the work week, November 21 through November 23, without incident.  On information and belief, this representation was fraudulent and intended to set Martin up for termination.

On November 27, 2018, Martin returned to work, and he was called into the office by his production manager, Respondent Bragger, and Ms. Myra Rivera. Respondent Bragger and Ms. Rivera informed Martin that he was being suspended without pay, pending an investigation. Martin was not informed what matter was being investigated. Since Mr. Martin had been working for Respondent for exactly one year at this point, he was due for a $1.00 per hour pay raise. Additionally, Martin had accumulated over 400 hours of overtime, which entitled Martin to a significant bonus, in the thousands of dollars, which should have been paid to Complainant in the following February.
Respondent suspended Martin to avoid giving him his pay raise and to avoid paying his bonus.  Respondents took retaliatory action against Martin due to his engaging in protected activity and seeking Worker's Compensation medical care.

-3-
*Complaint – DFEH No. 201911-08368022*

Date Filed: November 22, 2019
Date Amended: November 23, 2020

On information and belief, Respondents suspended Martin on the day prior to his work anniversary in order to prevent Martin from exercising his FMLA and CFRA rights.

On December 8, 2018, Respondent Bragger called Martin and informed him that he was being terminated because of his attendance points. Clearly, Martin was terminated in retaliation for having filed a worker's compensation claim. Retaliation for filing a worker's compensation claim, which is a protected activity, is a violation of Labor Code § 132(a). As a result, Martin's termination was wrongful in violation of California's Public Policy.

-4-

*Complaint – DFEH No. 201911-08368022*

Date Filed: November 22, 2019
Date Amended: November 23, 2020

1   VERIFICATION

2   I, **Levi Lesches**, am the **Attorney** in the above-entitled complaint.  I have read the
3   foregoing complaint and know the contents thereof.  The matters alleged are based
    on information and belief, which I believe to be true.
4
    On November 23, 2020, I declare under penalty of perjury under the laws of the State
5   of California that the foregoing is true and correct.

6                                                                       **Los Angeles, CA**

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27                                        -5-
                              *Complaint – DFEH No. 201911-08368022*
28
    Date Filed: November 22, 2019
    Date Amended: November 23, 2020