**LESCHES LAW**
LEVI LESCHES — Cal. Bar No. 305173
5757 Wilshire Boulevard, Suite 535
Los Angeles, CA 90036
Phone: (323) 900-0580
Email: levi@lescheslaw.com

ATTORNEYS FOR
Plaintiff Richard MARTIN

# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MARTIN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>BALL CORPORATION, an Indiana Corporation; BALL METAL BEVERAGE CONTAINER CORP., a Colorado Corporation; and DOES 1 through 20, inclusive.<br><br>Defendant. | Case No: 2:21-cv-01049-DAD-CKD<br>Dist. Judge Hon. Dale A. Drozd<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES**<br><br>**(1) DISABILITY DISCRIMINATION (FEHA)**<br>**(2) FAILURE TO PROVIDE REASONABLE ACCOMMODATIONS (FEHA)**<br>**(3) DISABILITY RETALIATION (FEHA)**<br>**(4) FAILURE TO ENGAGE IN A TIMELY GOOD–FAITH INTERACTIVE PROCESS (FEHA)**<br>**(5) CFRA RETALIATION**<br>**(6) FMLA RETALIATION**<br>**(7) SICK-LEAVE RETALIATION/UNLAWFUL POLICY (*LAB. CODE* § 246 *ET SEQ.*)**<br>**(8) *TAMENY***<br>**(9) UCL — § 17200**<br><br>**JURY TRIAL DEMANDED ON ALL COUNTS** |

**Plaintiff Richard Martin, demanding a jury trial on all counts, alleges:**

## JURISDICTION & VENUE

1. **Plaintiff Richard Martin**, at the time of the filing of this action, was a resident, domiciliary, and citizen of California, with his primary place of residence in Solano County.

2. **Defendant BALL Corporation** is a corporation organized under the laws of the State of Indiana, with its principal place of business identified in state filings as 9200 W. 108th Circle Westminster, Colorado 80021.

3. **Defendant BALL Metal Beverage Container Corporation** is a corporation organized under the laws of the State of Colorado, with its principal place of business identified in state filings as 9200 W. 108th Circle Westminster, Colorado 80021.

4. **Defendant BALL Corporation & Defendant BALL Metal Beverage Container Corporation** are referred to collectively as "**Defendants BALL**."

5. The BALL Defendants operate an industrial plant in Solano County, at 2400 Huntington Dr, Fairfield, CA 94533.

6. Plaintiff has, within the time prescribed by law, obtained a "right-to-sue" letter from the California Department of Fair Employment and Housing; a copy of which letter is attached hereto as Exhibit "A".

7. Plaintiff does not know the true names of Defendants Does 1 through 20, inclusive, and therefore sues them by those fictitious names. Plaintiff is informed and believes, and on the basis of that information and belief, herein alleges, that each of those Defendants was in some manner legally responsible for the events and happenings alleged in this Complaint and for Plaintiff's damages. The names, capacities, and relationships of Does 1 through 20, will be alleged by amendment to this Complaint when they are known.

8. Plaintiff is informed and believes, and based thereon alleges, that at all times mentioned herein, Defendant Does 1 through 20, inclusive, and each of them, were the agents and/or employees of each of the remaining Defendants, and each of them, in doing the acts alleged in this

Complaint, were acting within the purpose and scope of said agency and employment.

9. Each Defendant is sued individually and as an agent, conspirator, aider and abettor, investor, manager, unit-holder, employee and/or control-person for each of the other Defendants, and the liability of each Defendant arises from the fact that each has engaged in all or part of the unlawful acts, plans, schemes, or wrongs complained of herein and was acting within the course and scope of said agency, partnership, conspiracy, and employment.

10. Plaintiff does not know the entity that employed him, and sued the Ball Defendants under subdivision (c) of section 379 of the *Code of Civil Procedure*, which provides that "[w]here the plaintiff is in doubt as to the person from whom he or she is entitled to redress, he or she may join two or more defendants, with the intent that the question as to which, if any, of the defendants is liable, and to what extent, may be determined between the parties."

## **GENERAL ALLEGATIONS**

11. Plaintiff MARTIN was employed by Defendants BALL as a machinist in BALL's Fairfield Plant, which manufactures cans of the type used to package canned soup, vegetables, and similar products.

12. On November 6, 2018, MARTIN was injured at work while lowering a hopper of manufactured cans.

13. MARTIN reported that he was injured to a supervisor; the supervisor gave MARTIN ibuprofen and sent him back to work.

14. Every day for the following four days, MARTIN reported to his supervisors that he was injured; yet, each day, MARTIN was sent back to work.

15. Finally, MARTIN advised Defendants BALL that unless he was provided medical assistance he would leave work and work it out himself.

16. Only AFTER MARTIN made this ultimatum, MARTIN'S supervisors sent him to meet with a Human Resources representative who took MARTIN to a hospital where he was diagnosed with a pulled muscle behind his rotator cuff.

17. The hospital gave MARTIN a shot, muscle relaxants, and pain medications, and set him up with an appointment with a Workers Compensation doctor.

18. The doctor told MARTIN he could return to work on light duty. His work restrictions included no heavy lifting or pulling.

19. Defendants BALL switched MARTIN to a light-duty position, but in this position, he was not given any overtime work.

20. MARTIN had accumulated over 400 hours of overtime in the preceding months, and MARTIN was retaliated against by being denied overtime.

21. MARTIN was also required to change from his previous night shift to a day shift, without being provided any reasonable accommodation in the form of being provided time to seek and obtain childcare during those different work hours; in violation of Labor Code section 230.8.

22. On November 20, 2018, MARTIN went, to a scheduled doctor's appointment with his Worker's Compensation doctor.

23. MARTIN returned from the doctor's appointment at 11:00 a.m. and advised his supervisor that he was ready to work his regular 6 p.m. to 6 a.m. shift. The supervisor advised Martin that he would not be allowed to work at 6:00 p.m., because the company required at least 8 hours between shifts.

24. The supervisor advised MARTIN that, due to the fact that he had gone to a Worker's Compensation on company time, he would not be allowed to begin his shift until 8 p.m., and he would be docked one "point", pursuant to the company's policy of: Docking one point for missing the first hour in a shift; and docking two points for time missed in excess of 1.1 hours.

25. MARTIN had offered to come at 8 p.m. until 8 a.m. to avoid being docked any points. That offer was refused. MARTIN was advised that, no matter what, he would be docked one point because his Worker's Compensation doctor's visit would delay his next shift.

26. MARTIN had been advised that EXCEEDING 10 points was grounds for termination.

27. Because November 28, 2018 was MARTIN'S work anniversary, and would reset the

1  "points" to zero, MARTIN asked whether taking off the entire shift---which would result in two
2  points---would be grounds for termination.

3  28.    MARTIN'S supervisor consulted with the workplace policy manual, in front of
4  Martin, and then assured Martin that only EXCEEDING 10 points---i.e. accruing eleven points---
5  was grounds for termination. Relying on this assurance, MARTIN took the remainder of his shift
6  off.

7  29.    MARTIN returned to work the next shift, and worked the remainder of the work
8  week, November 21 through November 23, without incident.

9  30.    On November 27, 2018, MARTIN returned to work, and he was called into the office
10 by his production manager, Brager, and a Human Resources Representative.

11 31.    Brager and the Human Resources Representative informed Martin that he was being
12 suspended without pay, pending an investigation.

13 32.    MARTIN was not informed what matter was being investigated. Since Mr.
14 MARTIN had been working for Defendants BALL for exactly one year at this point, he was due
15 for a $1.00 per hour pay raise.

16 33.    Defendants BALL took retaliatory action against MARTIN due to his engaging in
17 protected activity by seeking disability accommodations.

18 34.    Alternatively, Defendants BALL suspended and terminated MARTIN because,
19 knowing that he had been injured, and that, on his work anniversary, his FMLA/CFRA rights would
20 accrue, Defendants BALL suspended and terminated MARTIN so as to avoid FMLA/CFRA
21 obligations.

22 35.    On December 8, 2018, Brager called MARTIN and informed him that he was being
23 terminated because of his attendance points. Clearly, MARTIN was terminated in retaliation for
24 having sought an accommodation for a temporary disability.

25 36.    As a result, Martin's termination was wrongful in violation of California's Public
26 Policy.

27
28

**FIRST CAUSE OF ACTION**

**Disability Discrimination (FEHA)**

**SECOND CAUSE OF ACTION**

**Failure to Provide Reasonable Accommodations (FEHA)**

**By Plaintiff MARTIN against Defendants BALL**

**and Does 1 through 20, Inclusive**

37. Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

38. Defendants BALL, and Does 1 through 20, inclusive, employed more than 5 employees within California.

39. Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20, inclusive.

40. Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN had a torn rotator cuff, constituting a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

41. Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN as having a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

42. Plaintiff MARTIN was able to perform all essential job duties, either with reasonable accommodations, such as "job restructuring," "modified work schedule," "unpaid leave," and/or other reasonable accommodations, 2 C.C.R. § 11065(p); *id.*. § 11068(c); and/or Plaintiff MARTIN was able to perform all essential job duties without reasonable accommodation.

43. Defendants BALL, and Does 1 through 20, inclusive, discharged Plaintiff and/or subjected Plaintiff to adverse employment action and/or refused to provide Plaintiff with reasonable

1 accommodations, including, without limitation, refused to provide Plaintiff with the reasonable
2 accommodations of being able to visit a doctor and obtain medical care.

3     44.    Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1
4 through 20, inclusive.

5     45.    The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a
6 substantial factor in causing MARTIN's harm.

7     46.    Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount
8 no less than $250,000.

9     47.    Said conduct by Defendants, and Does 1 through 20, and each of them, was
10 intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's
11 rights. The described conduct was done with malice, oppression, and/or fraud, in a manner that
12 renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such
13 sum that shall be determined at the time of trial.

### THIRD CAUSE OF ACTION
### Disability Retaliation (FEHA)
### By Plaintiff MARTIN against Defendants BALL
### and Does 1 through 20, Inclusive

18     48.    Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph

19     49.    Defendants BALL, and Does 1 through 20, inclusive, employed more than 5
20 employees within California.

21     50.    Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,
22 inclusive.

23     51.    Plaintiff MARTIN engaged in the protected activity of requesting disability
24 accommodations, including, without limitation, requesting the disability accommodation of leave
25 from work to obtain medical treatment necessary for treating MARTIN's disability.

26     52.    Plaintiff MARTIN was discharged and/or subjected to an adverse employment
27 action.

53. Plaintiff MARTIN's protected activity in requesting disability accommodations, including, without limitation, requesting the disability accommodation of leave from work to obtain medical treatment necessary for treating MARTIN's disability, were a substantial motivating reason for the decision by Defendants BALL, and Does 1 through 20, inclusive, to discharge Plaintiff MARTIN.

54. Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN had a torn rotator cuff, constituting a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

55. Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN as having a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

56. Plaintiff MARTIN was discharged and/or subjected to an adverse employment action because he was disabled and/or because Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN as being disabled.

57. Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1 through 20, inclusive.

58. The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a substantial factor in causing MARTIN's harm.

59. Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount no less than $250,000.

60. Said conduct by Defendants, and Does 1 through 20, and each of them, was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights. The described conduct was done with malice, oppression, and/or fraud, in a manner that

renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such sum that shall be determined at the time of trial.

## FOURTH CAUSE OF ACTION

## Failure to Engage in Timely Good-Faith Interactive Process (FEHA)

## By Plaintiff MARTIN against Defendants BALL

## and Does 1 through 20, Inclusive

61. Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

62. Defendants BALL, and Does 1 through 20, inclusive, employed more than 5 employees within California.

63. Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20, inclusive.

64. Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN had a torn rotator cuff, constituting a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

65. Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN as having a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

66. Plaintiff MARTIN was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that he would be able to perform the essential job requirements.

67. Defendants BALL, and Does 1 through 20, inclusive, failed to participate in a timely good-faith interactive process with Plaintiff MARTIN to determine whether reasonable accommodation could be made.

68. Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1 through 20, inclusive.

69. The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a substantial factor in causing MARTIN's harm.

70. Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount no less than $250,000.

71. Said conduct by Defendants, and Does 1 through 20, and each of them, was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights. The described conduct was done with malice, oppression, and/or fraud, in a manner that renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such sum that shall be determined at the time of trial.

## FIFTH & SIXTH CAUSE OF ACTION

## CFRA/FMLA Retaliation

## By Plaintiff MARTIN against Defendants BALL

## and Does 1 through 20, Inclusive

72. Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

73. Defendants BALL, and Does 1 through 20, inclusive, employed more than 50 employees within California.

74. Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20, inclusive.

75. On no later than November 28, 2018, Plaintiff MARTIN became eligible to no less than 12 weeks job-protected leave.

76. Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN had a torn rotator cuff, constituting a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

77. Defendants BALL, and Does 1 through 20, believed that Plaintiff MARTIN, being injured, would potentially seek to take CFRA leave, and, for such reason, Defendants BALL, and Does 1 through 20, terminated Plaintiff MARTIN without providing him reasonable accommodations and/or without providing him a reasonable opportunity to challenge his termination and/or through misrepresenting its point policy, so as to preclude MARTIN's ability to take protected leave.

78. The belief by Defendants BALL, and Does 1 through 20, that Plaintiff MARTIN was likely to seek CFRA leave was a substantial motivating reason for Plaintiff MARTIN being discharged and/or subjected to an adverse employment action.

79. Plaintiff MARTIN, in fact, made a request for FMLA leave, only to be told he was not eligible; and, thereafter, Plaintiff MARTIN was fired before he could claim eligibility.

80. Additionally, Plaintiff MARTIN is aware of another employee that was fired on her one-year work anniversary. Plaintiff MARTIN is informed and believed, and thereon alleges, that Defendants BALL, and Does 1 through 20, inclusive, perceived that other employee as likely to seek CFRA/FMLA rights.

81. Plaintiff MARTIN was discharged and/or subjected to an adverse employment action because he was disabled and/or because Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN as being disabled.

82. Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1 through 20, inclusive.

83. The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a substantial factor in causing MARTIN's harm.

84. Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount no less than $250,000.

85. Said conduct by Defendants, and Does 1 through 20, and each of them, was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights. The described conduct was done with malice, oppression, and/or fraud, in a manner that

renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such sum that shall be determined at the time of trial.

### SEVENTH CAUSE OF ACTION

### Violation of Healthy Workplaces, Healthy Families Act of 2014 (HWHFA)

### By Plaintiff MARTIN against Defendants BALL

### and Does 1 through 20, Inclusive

86. Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

87. Defendants BALL, and Does 1 through 20, inclusive, employed Plaintiff MARTIN within California.

88. Defendants BALL, and Does 1 through 20, inclusive, employed MARTIN <u>without</u> any applicable Collective Bargaining Agreement as a machinist in Defendants BALL's Fairfield food-can manufacturing facility, and, accordingly, Defendants BALL, and Does 1 through 20, inclusive, were not exempt under section 245.5 of the *Labor Code*.

89. Defendants BALL implemented an unlawful Sick Leave policy that failed to satisfy the minimum requirements of California's HWHFA. (*Lab. Code*, § 246(e).)

90. Defendants BALL, and Does 1 through 20, inclusive, employed MARTIN, and similarly-situated employees, in 12-hour shifts.

91. Under the sick-leave policy ("The Unlawful Absence Policy") of Defendants BALL, and Does 1 through 20, inclusive, employees were not allowed to take incremental sick leave absences. Rather, employees were required to take paid sick leave in unlawfully rigid "blocks" of paid sick time.

92. Plaintiff is informed and believed that absences of 1 minute to 60 minutes were counted as one point; and absences of 61 minutes to 720 minutes were counted as two points.

93. Accruing eleven points within a 12-month period constituted grounds for termination under The Unlawful Absence Policy.

94. Under The Unlawful Absence Policy, points reset to zero annually on the employee's hire-date anniversary.

95. Under The Unlawful Absence Policy, an employee needing less than eight hours leave for personal sickness and/or family sickness had no option to use two-hour increments of paid leave. Rather, an employee needing, for instance, three hours leave for personal sickness and/or family sickness would be deemed to have been absent for the entire shift.

96. Under The Unlawful Absence Policy, an employee could not carry sick days over to the following year. Under The Unlawful Absence Policy, allowable sick time was capped.

97. Accordingly, Defendants BALL, and Does 1 through 20, inclusive, were legally required to provide no less than "24 hours or three days in each year of employment." (*Lab. Code*, § 246(d); *id*, § 246(b)(4).)

98. Accordingly, Defendants BALL, and Does 1 through 20, inclusive, were legally required to provide employees with the option of taking sick leaves in increments of no more than 2 hours minimum.

99. The Unlawful Absence Policy apparently interprets subdivision (b)(4)/(d)'s provision for three-day leave as a safeharbor; *i.e.*, the Unlawful Absence Policy apparently views compliance with subdivision (k)'s provision, which requires employers to authorize leave in increments no greater than 2 hours, as satisfied if three full days have been provided as paid sick leave.

100. The apparent construction given by Defendants to the HWHFA is absurd on its face, because if subdivisions (b)(4) & (d) indeed constituted a safeharbor to subdivision (k), then it would necessarily follow that subdivision (k) only protects employees working shifts **of at least thirteen hours**. For employees working shifts of less than thirteen hours, there would be no need for a two-hour maximum on increment usage, because, even with a four-hour usage increment, the employee would still have sufficient time to spread over three days.

101. Because it is an absurdity to suppose that subdivision (k) is a protection limited to workers doing doubletime shifts, it necessarily follows that an employer's policy furnishing 3 days paid leave does not, itself, constitute adequate compliance with the HWHFA.

102. Rather, a HWHFA-compliant policy must furnish 24 paid hours, spreadable over *as*

*many as twelve days* (*i.e.*, if the employer imposes a two-hour usage increment); except that if the employee's shift is less than eight hours, the employer does not need to give more than three full days of sick HWHFA time.

103. Defendants BALL, and Does 1 through 20, inclusive, terminated Plaintiff based on the pretextual basis that Plaintiff had, supposedly, accumulated 10 "points" in a year period, in addition to the 3 HWHFA days taken by Plaintiff in that period.

104. However, Plaintiff had been denied the option of taking HWHFA leave in increments of less than 12 hours.

105. If Plaintiff had been offered the option of taking HWHFA leave in increments of less than 12 hours, Plaintiff would not have used all his HWHFA time within the twelve-month period.

106. Accordingly, Plaintiff was unlawfully terminated due to Defendants BALL, and Does 1 through 20, inclusive, and all of them, refusing to allow Plaintiff to utilize statutory HWHFA leave in increments of two-hours or less.

107. Plaintiff's termination was, therefore, a "per se" violation of the HWHFA. (*Lab. Code* § 234.)

108. Accordingly, Plaintiff is entitled to bring suit for reinstatement and actual damages. (*Lab. Code* § 233(e); *id.*, § 248.5(e).)

109. Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount no less than $250,000.

## EIGHTH CAUSE OF ACTION
### *TAMENY*
### By Plaintiff MARTIN against Defendants BALL
### and Does 1 through 20, Inclusive

110. Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph

111. Plaintiff MARTIN was an employee of Defendants BALL and Does 1 through 20,

inclusive.

112. On no later than November 28, 2018, Plaintiff MARTIN became eligible to no less than 12 weeks job-protected leave.

113. Defendants BALL, and Does 1 through 20, inclusive, knew that Plaintiff MARTIN had a torn rotator cuff, constituting a musculoskeletal physical disability and/or other disability under 2 C.C.R. § 11065(d), and which limited, amongst other limitations, the major life activities of "performing manual tasks," "reaching," "lifting," "bending," and the "operation of . . . musculoskeletal . . . functions." 2 C.C.R. § 11065(l).

114. Defendants BALL, and Does 1 through 20, believed that Plaintiff MARTIN, being injured, would potentially seek to take CFRA leave, and, for such reason, Defendants BALL, and Does 1 through 20, terminated Plaintiff MARTIN without providing him reasonable accommodations and/or without providing him a reasonable opportunity to challenge his termination and/or through misrepresenting its point policy, so as to preclude MARTIN's ability to take protected leave.

115. The belief by Defendants BALL, and Does 1 through 20, that Plaintiff MARTIN was likely to seek CFRA leave was a substantial motivating reason for Plaintiff MARTIN being discharged and/or subjected to an adverse employment action.

116. Plaintiff MARTIN was discharged and/or subjected to an adverse employment action because he was disabled and/or because Defendants BALL, and Does 1 through 20, inclusive, perceived Plaintiff MARTIN as being disabled.

117. Additionally, Defendants BALL, and Does 1 through 20, inclusive, terminated Plaintiff based on the pretextual basis that Plaintiff had, supposedly, accumulated 10 "points" in a year period, in addition to the 3 HWHFA days taken by Plaintiff in that period.

118. However, Plaintiff had been denied the option of taking HWHFA leave in increments of less than 12 hours.

119. If Plaintiff had been offered the option of taking HWHFA leave in increments of less than 12 hours, Plaintiff would not have used all his HWHFA time within the twelve-month

period.

120. Accordingly, Plaintiff was unlawfully terminated due to Defendants BALL, and Does 1 through 20, inclusive, and all of them, refusing to allow Plaintiff to utilize statutory HWHFA leave in increments of two-hours or less.

121. Plaintiff's termination was, therefore, a "per se" violation of the HWHFA. (*Lab. Code* § 234.)

122. Plaintiff's termination was a violation of public policy in that Plaintiff's termination violated the public policy of California's sick-time laws, through denying Plaintiff sick time and then terminating Plaintiff on that basis; in that Plaintiff's termination was motivated by an intent to deprive Plaintiff's CFRA rights from vesting and accruing; in that Plaintiff's termination was motivated by an intent to discriminate against Plaintiff due to Plaintiff being disabled and/or being perceived as disabled; in that Plaintiff's termination was motivated by an intent to avoid accommodating Plaintiff's disability; in that Defendants, terminated Plaintiff due to the injury incurred in the Defendants' service, thereby violating fundamental public policy as articulated in *Judson Steel Corp. v. Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 658, 661.

123. Plaintiff MARTIN was harmed by such conduct by Defendants BALL, and Does 1 through 20, inclusive.

124. The conduct of Defendants BALL, and Does 1 through 20, inclusive, were a substantial factor in causing MARTIN's harm.

125. Plaintiff MARTIN has been harmed in an amount to be proven at trial, in an amount no less than $250,000.

126. Said conduct by Defendants, and Does 1 through 20, and each of them, was intentional and despicable, and perpetrated with willful and conscious disregard for Plaintiff's rights. The described conduct was done with malice, oppression, and/or fraud, in a manner that renders Defendants, and Does 1 through 20, and each of them, liable for punitive damages in such sum that shall be determined at the time of trial.

## NINTH CAUSE OF ACTION

### *Bus. & Prof.* §§ 17200 *et seq.*

### By Plaintiff MARTIN

### against Defendants BALL and Does 1 through 20, Inclusive

127. Plaintiff MARTIN herein incorporates paragraphs 1 through the instant paragraph.

128. Defendants BALL, and Does 1 through 20, and each of them, have engaged and continue to engage in unfair and/or unlawful business practices in California in violation of *California Business and Professions Code* § 17200 *et seq.,* in committing the various wrongdoings, torts, statutory violations, and unlawful, unfair, and fraudulent business practices herein.

129. On information and belief, Defendants BALL, and Does 1 through 20, and each of them, have engaged and continue to engage in unfair and/or unlawful business practices by failing to provide adequate FEHA training and by failing to provide reasonable oversight against unlawful practices within the various Defendants' organizations.

130. Defendants BALL, and Does 1 through 20, and each of their, utilization of these unfair and/or unlawful business practices constitutes unfair and/or unlawful competition as such practices have procured Defendants, and Does 1 through 20, and each of them, an unfair advantage over Defendants' competitors who have been and/or are currently employing workers and attempting to do so in honest compliance with applicable laws.

131. Defendants BALL utilization of these unfair and/or unlawful business practices constitutes a public nuisance.

132. Plaintiff is a victim of Defendant's unfair and/or unlawful conduct alleged herein, and Plaintiff seeks full restitution of monies, as necessary and according to proof, to restore any and all monies withheld, acquired and/or converted by Defendants BALL pursuant to *Business and Professions Code* §§ 17203 and 17208. 96.

133. Defendants BALL was compelled to retain the services of counsel to file this court action to protect his interests and those of the public, to obtain injunctive relief on behalf of the public, and to enforce important rights affecting the public interest.  Plaintiff has thereby incurred

the financial burden of attorneys' fees and costs, which he is entitled to recover under section 1021.5 of the *Code of Civil Procedure*.

### PRAYER FOR RELIEF

Plaintiff RICHARD MARTIN, individually, and on behalf of all other similarly situated, accordingly prays for the following relief against BALL CORPORATION, an Indiana Corporation; BALL METAL BEVERAGE CONTAINER CORP., a Colorado Corporation; and DOES 1 through 20, inclusive, as follows:

(1) For compensatory damages, including back pay, front pay, and/or future earnings, in an amount no less than $250,000;

(2) For all special and consequential damages;

(3) For reinstatement;

(4) For restitution;

(5) For punitive damages,

(6) For all attorneys' fees incurred;

(7) For all costs of suit;

(8) For penalties, as authorized by statute;

(9) For prejudgment and postjudgment interest;

(10) For injunctive relief;

(11) For such other and further relief as the Court deems just and proper.

Dated:  August 29, 2024                **LESCHES LAW**


                                          /s/ Levi Lesches

                                          Attorneys for Plaintiff RICHARD MARTIN

— **JURY DEMAND** —

Plaintiff hereby demands a jury trial with respect to all issues triable by jury.

Dated: August 29, 2024				**LESCHES LAW**


					_/s/ Levi Lesches_

					Attorneys for Plaintiff RICHARD MARTIN